IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DRFP L.L.C. d/b/a SKYE VENTURES,** | : | |
| | : | |
| Plaintiff, | : | Case No. 02:04-cv-793 |
| | : | |
| v. | : | Judge Holschuh |
| | : | |
| **THE REPUBLICA BOLIVARIANA DE VENEZUELA, et al.,** | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

## FIRST AMENDED COMPLAINT

### Jurisdiction

1. This court has subject matter and <u>in personam</u> jurisdiction of the action pursuant to 28 U.S.C. § 1602 et seq. and 28 U.S.C.§ 1330.

2. Venue is proper in this District pursuant to 28 U.S.C.§1391(f)(1) and Local Rule 82.1, as a substantial part of the events and omissions that give rise to this lawsuit occurred in the Southern District of Ohio and the property that is the subject of this lawsuit is situated in this judicial District.

### Parties

3. DRFP L.L.C. d/b/a Skye Ventures, LLC (hereinafter "Skye") is a limited liability company duly organized under Ohio law with its principal place of business in Columbus, Ohio, U.S.A.

4. The Republic of Venezuela (hereinafter "Republic") is a sovereign state in South America.

5. The Venezuelan Ministry of Finance (hereinafter "Ministry"), successor to the Ministry Hacienda, is a duly constituted instrumentality, agency and/or political subdivision of the Venezuelan government. The Honorable Ali Rodriguez is the Republic's current Minister of Finance. At times relevant to this action, the Honorable Tobias Nóbrega Suarez was the Republic's Minister of Finance.

**Factual Allegations**

6. In 1981 Banco Desarrollo Agropecuario SA (hereinafter "Bandagro") was an organized financial institution in Venezuela, S.A., having been established pursuant to the laws of the Republic.

7. In December, 1981, Bandagro issued a series of zero coupon bearer promissory notes for sale in the international financial markets, thereby engaging in commercial activity. Included among the notes Bandagro issued were notes 7/12 and 8/12, attached hereto as Exhibits 1A and 1B (hereinafter the "Notes.") Said Notes were to mature in December, 1991.

8. The officers of Bandagro and other officials of the Republic had the legitimate authority of the Republic to bind the Republic as guarantor of the Notes as set forth on the face of the Notes, pursuant to Article 50 of the Public Credits Organic Law dated August 27, 1981 and other laws of the Republic.

9. Upon information and belief, Bandagro issued the Notes for the purpose of, among other things, providing funding for certain economic development programs in the Republic.

10. Upon further information and belief, Bandagro sold the Notes at issue and others in international financial markets. The Republic guaranteed the Notes to protect its reputation, and Bandagro's reputation, in international financial markets. By guaranteeing the

Notes, the Republic reassured prospective purchasers that notes issued by Bandagro would be paid and induced third parties to purchase such notes.

11. The Notes expressly declare that the obligation to pay them is guaranteed by the Republic in accordance with the representations contained in the letter of the Ministry of Hacienda, number 733, dated November 5, 1981. Additionally, in December, 1991, the Minister of Hacienda, the predecessor to the current Minister of Finance, unilaterally extended the Notes' maturity until December, 1999, and has refused to date to honor payment demanded by Plaintiff.

12. Bandagro's issuance of the Notes, and Defendants' guarantee of them, constitute "commercial activity" within the meaning of 28 U.S.C. §1605, et seq. Defendants' refusal to pay the Notes has had a direct effect in the United States because Plaintiff had validly designated Columbus, Ohio as the place of payment and demanded payment in Columbus, Ohio.

13. The Notes are governed by the laws of Switzerland, the procedures of the International Chamber of Commerce (hereinafter ICC), and the United States Council of the ICC Brochure 322 (now 522), are written in English, and are payable in U.S. Dollars as set forth on the face of the Notes. Under the applicable laws, rules and/or regulations, demand for payment of matured bearer promissory notes may be made upon the guarantor from any location where such notes are held and requires the guarantor to make deposit of funds at such location, including locations in the United States.

14. Skye is the owner, holder and bearer of Notes bearing numbers 7/12 and 8/12 totaling One Hundred Million Dollars ($100,000,000.00 US). Skye obtained the Notes from Gruppo Triad-FCC SPA.

15. Prior to the maturity of the Notes, Bandagro ceased operations and is currently defunct.

16. Pursuant to the terms of the Notes and the laws of the Republic, the Ministry of Finance and the Republic, as obligors and guarantors of the Notes, are the responsible entities for satisfying the debt obligations due under the Notes and otherwise complying with all of the terms and conditions created by the Notes.

17. At all relevant times, Defendants were aware that Bandagro notes were trading on secondary, international markets.

18. In April 2002, after previous demands and other attempts to collect the Notes, correspondence was sent to the Ministry of Finance and to the President of the Republic requesting payment of certain Bandagro notes. On June 25, 2002 the Private Secretary to the President of the Republic sent Official Communication 0711 to the Minister of Finance asking him to investigate the matter.

19. In 2003, the Honorable Deputy Luís Velázquez Alvaray (hereinafter "Deputy Alvaray," who at the time chaired the Sub-Commission on Government Expenditure Control, attached to the Comptrollership Commission of the National Assembly of Venezuela), acting pursuant to Article 223 of Venezuela's National Constitution, instructed Finance Minister Nóbrega to conduct an administrative investigation to determine the validity of the Notes. Deputy Alvaray further explained to Finance Minister Nóbrega that if the Ministry of Finance determined that the Notes were authentic he should take the necessary steps to ensure that the Republic paid the indebtedness due under the Notes.

20. In March, 2003 Minister Nóbrega informed Deputy Alvaray that he had instructed the Office of Legal Counsel for the Ministry of Finance and the Legal Counsel for the Office of National Public Credit to investigate the matter for the purpose of determining the legitimacy of the Notes. In April, 2003 Minister Nóbrega opened a formal administrative

proceeding and commissioned the investigation. On behalf of the Ministry of Finance, investigators examined documents and traveled to the United States and Switzerland to examine the Notes.

21. The formal administrative proceeding conducted by the Ministry of Finance included an official inspection of the Notes involved in this case. The inspection was conducted in the United States by duly appointed Venezuelan officials, who concluded that the Notes were genuine.

22. After concluding a four-month investigation and compiling a detailed administrative file, the Ministry of Finance's Office of Legal Counsel issued a report concluding that the Note holders had legitimate rights to have the Notes processed for payment by the Republic, and further stating that the investigative report and findings would be provided to the Office of Attorney General so that a final and binding ruling could be issued. At all times, the individuals who conducted the investigation were acting in the course and scope of their employment or agency as employees or agents of the Republic.

23. In August, 2003 Minister Nóbrega submitted the investigation file and supporting documentation, without reservation or objection, to Marisol Plaza, then Attorney General for the Republic. Minister Nóbrega submitted the investigation file and supporting documentation pursuant to Venezuelan law and for the specific purpose of having the Attorney General render a final and binding decree as to whether the finding of the Ministry of Finance was correct. At all times relevant herein, Minister Nóbrega was acting within the course and scope of his employment as an employee of the Republic.

24. Attorney General Plaza reviewed the entire investigation file and all documents contained therein. Through Official Communication 0635, dated October 3, 2003,

Attorney General Plaza issued a decree stating that the Notes were valid and therefore were legally binding obligations owed by the Republic.  At all times, Attorney General Plaza was acting in the course and scope of her employment as an employee of the Republic.

25. The decree issued by Attorney General Plaza on October 3, 2003 was final and binding, recognized the rights of third parties who had acquired interests in the Notes, and recognized that the Notes were trading on international markets.  In her decree, Attorney General Plaza stated that its purpose was to issue a final and binding decree.  The decree ordered the Minister of Finance to process payment on the Notes.

26. On or about October 17, 2003, the Minister of Finance sent a copy of the Attorney General's official decree to the holder of the Notes and claimant in the administrative proceeding.  The official decree was subsequently provided to Skye.

27. At no time after October 17, 2003 did the Ministry of Finance or the Attorney General send any other decision or decree to the holder of the Notes and claimant in the administrative proceedings attempting to alter or amend the decree.

28. At the time Defendants made official proclamations decreeing the validity of the Notes, Defendants knew that Bandagro-issued promissory notes were being traded in international financial markets.  Defendants further knew or should have known that purchasers of the Notes that were the subject of the investigation conducted by the Ministry of Finance and the Office of Attorney General would, when evaluating and deciding to purchase the Notes on secondary markets, rely upon Defendants' decree and/or statements and/or rulings regarding the validity of the Notes.

29. In deciding to purchase the Notes, Skye relied on the Republic's guarantee that it would pay the Notes and upon the Attorney General's October 3, 2003 decree.  Skye's

reliance was objectively and subjectively reasonable. The marketability and value of the Notes was wholly dependent upon such guarantee and decree at the time of Skye's purchase.

30. With respect to the Notes, Skye is a "holder in due course" as that term is defined under Ohio law and the Uniform Commercial Code.

31. The Ministry is the political subdivision, instrumentality and/or agency of the Republic charged with the payment of the Notes as set forth in the final decree and judgment of the Attorney General of the Republic that was issued October, 2003.

32. On August 11, 2004, Skye, (i) had possession of and was the bearer of Notes Nos. 7/12 and 8/12 in Columbus, Ohio, and (ii) made demand from Columbus, Ohio and through its attorneys, pursuant to Swiss law and the provisions of the Notes and ICC rules, upon the Ministry for redemption of the Notes requesting funds to be deposited in a financial institution in Columbus, Ohio, U.S.A.

33. The Ministry and the Republic failed to tender payment as guarantors of the Notes within a commercially reasonable time after Skye's presentment and demand.

## **COUNT ONE – Action For Default On The Notes**

34. Notes Nos. 7/12 and 8/12 represent legal and valid financial obligations of the Republic, as guarantor.

35. In or about June, 2004, Skye, as owner, holder and bearer of said Notes, which are past maturity, made commercially reasonable and proper demand upon the Ministry for payment of the principal of the Notes and all accrued interest due on the Notes.

36. Defendants have failed to tender payment within a commercially reasonable time or otherwise honor the obligations of the Republic as guarantor of the Notes at issue.

37. Defendants' failure to honor Skye's demand for payment on the matured Notes constitutes a default of the Republic's debt obligation to Skye in the amount of $100,000,000.00, plus accrued interest to the date of actual payment in U.S. Dollars.

## COUNT TWO – Estoppel/Detrimental Reliance

38. After a thorough investigation, the Ministry determined that the Notes are valid and the Republic's Attorney General concluded that the Notes are obligations owed by Bandagro and guaranteed by the Republic.

39. Attorney General Plaza's October, 2003 decree was issued after an extensive administrative proceeding. Pursuant to Article 56 of the Organic Law of the Venezuelan Office of Attorney General, the October, 2003 decree was final, binding and not subject to review.

40. Upon information and belief, in November, 2003 the October, 2003 decree was recorded on the registries of the Office of Notary Public No. 32 of the Capital District Libertador Municipality under No. 76 of Volume 89. After being duly legalized and authenticated, it was presented to the Venezuelan General Consul in Switzerland.

41. When Attorney General Plaza issued the October, 2003 decree she knew or should have known that the owners and/or holders and/or bearers of the Notes, and purchasers of the Notes, would reasonably rely on the decree and would conclude that the Notes are valid and binding obligations owed by Defendants.

42. Skye reasonably relied on the October, 2003 decree in deciding to purchase Notes nos. 7/12 and 8/12. When a sovereign state expressly declares that it is obligated to pay a specific bearer promissory note, purchasers of such a note on international financial

markets are entitled to rely upon the sovereign state's acknowledgement of the obligation to pay such indebtedness.

43. Defendants are estopped from denying the validity of the Notes and are estopped from denying that the Notes are legitimate obligations owed by the Republic.

44. As a result of the foregoing, Defendants owe Skye the sum of $100,000,000.00, plus accrued interest to the date of actual payment in U.S. Dollars.

## COUNT THREE – Breach of Contract

45. The Notes, according to their terms, matured in December, 1991. The promise to pay the Notes when they came due was a binding contract by the maker thereof, and the Republic guaranteed payment of the Notes. Skye stands in privity with the prior holder of the Notes.

46. In December, 1991 Defendants unilaterally extended the maturity date of the Notes to December, 1999. The promise to pay the Notes when they came due under the new maturity date was a binding contract by the maker thereof, and the Republic guaranteed payment of the Notes on the new maturity date.

47. The unilateral act on the part of Defendants to extend the maturity of the Notes constitutes a breach of the material terms of the contract.

48. Skye, the owner, holder and bearer of the Notes, made reasonable presentment and demand for payment in accordance with the explicit terms of the Notes. Defendants, however, have refused to pay the Notes.

49. The failure of Defendants to pay the Notes in accordance with their terms is a breach of the material terms of the contract.

50. Due to the nature of the Notes as negotiable instruments and as an ongoing obligation that continues to accrue interest, the continued failure of Defendants to pay the Notes is an ongoing breach of contract.

51. As a result of Defendants' breaches of their obligation to pay the Notes and all interest thereon, Skye has been damaged in the amount of $100,000,000.00, plus accrued interest to the date of actual payment.

### COUNT FOUR – Promissory Estoppel

52. Attorney General Plaza's October, 2003 decree was made, in her own words, to "*to provide the final decision for mandatory compliance*" and was an unambiguous statement, promise and decree that Defendants would honor the Notes and pay all amounts due under the Notes. In the decree, Defendants expressly and impliedly recognized the rights of third parties with interests in the notes.

53. The decision induced holders and purchasers of the Notes to believe that the Republic had explicitly agreed and accepted the fact that the Notes were an indisputable and binding debt of the Republic.

54. Defendants knew or should have reasonably known that third parties would rely on the final and binding decree when determining whether to purchase the Notes and, further, Defendants reasonably expected or should have reasonably expected the decree to induce third parties such as Skye to purchase the Notes.

55. In making the decision to acquire the Notes, Skye substantially and reasonably relied on Defendant's promise to its detriment; indeed, Skye based its entire decision in reliance on the decree issued by Attorney General Plaza. That such actions would be taken by third parties such as Skye was obvious and foreseeable to Defendants.

56. The foregoing facts and circumstances created an implied or quasi-contractual obligation on the part of Defendants to pay Skye on the Notes based on the detrimental reliance of Skye and the doctrine of promissory estoppel.

57. As a result of the foregoing, justice requires that Skye be awarded contractual expectation damages in the sum of $100,000,000.00, plus accrued interest to the date of actual payment in U.S. Dollars.

## **COUNT FIVE - Negligence**

58. Defendants and/or their employees were aware that the Notes and other notes issued by Bandagro were being traded on secondary international markets.

59. Defendants and/or their employees knew or should have known that holders and/or prospective purchasers of the Notes and other Bandagro notes would rely on any representations Defendants made regarding the validity and binding nature of the Notes.

60. Defendants and/or their employees had a duty to carefully investigate the validity of the Notes, to accurately report the results of their investigation(s), and to ensure that holders and/or prospective purchasers of the Notes were apprised of Defendants' position regarding the validity of the Notes.

61. Defendants knew that that the October 3, 2003 decree issued by Attorney General Plaza had been disseminated to the public soon after it was issued and therefore knew or should have known that holders of the Notes and prospective purchasers of the Notes would rely upon the decree in deciding whether to purchase and/or sell the Notes. Defendants had a duty to immediately issue public statements and/or inform the holder of the Notes and any subsequent purchaser of the Notes if Defendants' position regarding the validity of the Notes changed.

62. Attorney General Plaza claims that after issuing the October 3, 2003 decree she "reversed" her ruling.  Defendants, however, did not issue a public statement regarding this purported "reversal" and did not inform the holder of the Notes or Skye of the purported "reversal" until long after Skye had purchased the Notes and had made a demand for payment.

63. Defendants and/or their employees breached their duty to properly investigate the validity of the Notes and/or to immediately issue a statement to the public and/or to the holder of the Notes and/or to Skye regarding the purported "reversal" of the October 3, 2003 decree.

64. Under the doctrine of respondeat superior, Defendants are liable for the negligent acts and/or omissions of their employees as described herein.

65. As a result of the negligence of Defendants and/or their employees, Skye has been damaged in the amount of $100,000,000.00, plus accrued interest to the date of actual payment.

## PRAYER FOR RELIEF

WHEREFORE, Skye respectfully prays for a money judgment against the Republic in the amount of $100,000,000.00 plus accrued interest in U.S. Dollars, its attorney fees and costs incurred herein, and any other relief, legal or equitable, that the Court deems just and proper.

Respectfully submitted,


/s/ Rex H. Elliott
Rex H. Elliott, Trial Counsel (0054054)
Charles H. Cooper, Jr. (0037295)
John C. Camillus (0077435)
Sheila P. Vitale (0068271)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio  43221
(614) 481-6000
(614) 481-6001 (Facsimile)

John P. Kennedy (0021795)
Andrew G. Douglas (0000006)
Crabbe, Brown & James, LLP
500 South Front Street
Columbus, Ohio  43215
(614) 228-5511
(614) 229-4559 (Facsimile)

Luis M. Alcalde
283 Brevoort Road
Columbus, Ohio  43214

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing First Amended Complaint was filed electronically and served electronically on the following counsel of record, this 2nd day of March, 2009:

>Daniel W. Costello, Esq.
>James D. Curphey, Esq.
>David S. Bloomfield, Jr., Esq.
>Porter, Wright, Morris & Arthur LLP
>41 South High Street
>Columbus, Ohio 43215
>
>Jay Kelly Wright, Esq.
>Paolo Di Rosa, Esq.
>Gaela K. Gehring Flores, Esq.
>Susan G. Lee, Esq.
>Dmitri Evseev, Esq.
>Bonard Molina-Garcia, Esq.
>Daniel Salinas-Serrano, Esq.
>Robert A. Schwartz, Esq.
>Arnold & Porter, LLP
>555 Twelfth Street, NW
>Washington, DC 20004-1206
>
>Attorneys for Defendants

/s/ Rex H. Elliott