IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DRFP L.L.C., d/b/a SKYE VENTURES,** | : | |
| | : | Case No. 2:04-cv-793 |
| Plaintiff, | : | |
| | : | Judge Holschuh |
| v. | : | |
| | : | Magistrate Judge Kemp |
| **THE REPUBLICA BOLIVARIANA DE VENEZUELA, et al.,** | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff DRFP L.L.C., d/b/a Skye Ventures ("Plaintiff") brought this action against the Republica Bolivariana de Venezuela and the Venezuelan Ministry of Finance (collectively, "Defendants") seeking damages for Defendants' default on two $50 million promissory notes allegedly issued by a state-owned Venezuelan bank and guaranteed by Defendants. This matter is before the Court on the Motions to Intervene as plaintiffs filed by Venospa, LLC ("Venospa") as a "collection agent" for Latin-Consult, S.A. ("Latin-Consult") (doc. # 158) and by Woodstrite Investments Limited ("Woodstrite") (doc. # 172). Also before the Court is Defendants' Motion to Stay any further proceedings in this Court during the pendency of their interlocutory appeal of one of this Court's previous rulings. (Doc. # 157.) For the reasons set forth below, both Motions to Intervene are **DENIED**. Defendants' Motion to Stay is **GRANTED**.

I.     Background

In 2004 Plaintiff acquired two $50 million promissory notes allegedly issued by a Venezuelan agricultural assistance bank and guaranteed by Defendants. Plaintiff acquired these notes, which were two out of a series of twelve, from a previous holder in reliance on an opinion

issued by the Venezuelan Attorney General acknowledging the notes' validity and Defendants' obligation to pay the notes. Plaintiff made a demand from Columbus, Ohio for payment on the notes but Defendants, after rescinding the Attorney General's prior opinion, refused payment and claimed that further investigation had revealed that the notes were forgeries. Plaintiff subsequently filed this suit for default on the promissory notes on August 23, 2004. (Doc. # 1.)

Defendants moved to dismiss the complaint on January 31, 2005. (Doc. # 13.) Among other grounds allegedly supporting dismissal, Defendants argued that this Court lacked subject matter jurisdiction due to their sovereign immunity from suit, and that the doctrine of forum non conveniens required dismissal and refiling in Venezuela. After a lengthy period of motion practice before two magistrate judges and the undersigned judge addressing how to best resolve the issues raised by Defendants' motion to dismiss, on February 13, 2009 this Court denied Defendants' motion as to the sovereign immunity and forum non conveniens issues. DRFP. L.L.C. v. The Republica Bolivariana de Venezuela et al., No. 2:04-cv-793, 2009 WL 414581 (S.D. Ohio Feb. 13, 2009). In that Opinion the Court held that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(2)'s commercial activity exception to Defendants' sovereign immunity. The Court found that because the notes in question permitted Plaintiff to demand payment from Columbus, Ohio, Defendants' refusal to pay on the notes caused a direct effect in the United States, as money that was supposed to have been delivered to a bank in Columbus did not arrive. Id. at **7–8. The Court further found that Venezuela was not a currently available alternative forum due to a recent ruling by the Venezuelan Supreme Court, and thus concluded that a forum non conveniens dismissal was inappropriate. Id. at **11–13.

Defendants, on March 2, 2009, indicated their intent to appeal as of right, under the collateral order doctrine, the Court's decision on the issue of sovereign immunity, but also requested a certificate of appealability as to the forum non conveniens issue allowing them to combine an interlocutory appeal on that issue with the appeal as of right on the sovereign immunity issue. (Doc. # 145.) Over Plaintiff's opposition, on April 1, 2009 the Court granted Defendants a certificate of appealability on the forum non conveniens issue. DRFP L.L.C. v. The Republica Bolivariana de Venezuela, et al., No. 2:04-cv-793, 2009 WL 948764 (S.D. Ohio Apr. 1, 2009). Defendants then filed their notice of appeal on April 6, 2009 (doc. # 156), and on April 7 moved to stay further proceedings in this Court during the pendency of their appeal before the Sixth Circuit (doc. # 157).

The next day, April 8, 2009, Venospa submitted articles of organization to the Ohio Secretary of State, who accepted them and recognized Venospa as a newly formed limited liability company in the state of Ohio. (Doc. # 170-2.) There is no indication in the record that Venospa existed prior to this date, or that it had any other connection to Ohio. That same day, Latin-Consult, a Swiss corporation and the alleged holder of four $25 million promissory notes also allegedly issued by the same Venzuelan agricultural assistance bank, but of a different series than the notes Plaintiff holds, assigned its collection rights in these four notes to Venospa. (Doc. # 195-5.) Venospa then faxed an unsigned letter to the Venezuelan Ministry of Finance demanding payment on the four Latin-Consult notes, and designating the U.S. Bank in Cincinnati, Ohio as the place of payment. The demand letter also stated that "these debt instruments . . . have been previously presented and dishonored," and that "[i]f we do not receive payment or have your response by Tuesday, April 15, 2009, we will consider your silence as an additional refusal to honor these debt instruments, now overdue and unpaid." (Doc. # 195-13.)

Venospa, however, did not wait until April 15 for Defendants' response, as it filed its motion to intervene in this case and alleged a default on the promissory notes on April 8, 2009—the same day that Venospa was organized, received collection rights on the Latin-Consult notes, and demanded payment. Although Latin-Consult did not join Venospa's motion to intervene, the proposed intervenor's complaint later filed by Venospa lists Latin-Consult as an intervenor plaintiff (doc. # 195), and Venospa's reply memorandum in support of its motion to intervene states that Latin-Consult is an intervenor (doc. # 174).

Nearly two months later another entity, Woodstrite, filed its motion to intervene. (June 25, 2009, doc. # 172.) Woodstrite alleges that it owns a 25.11% interest in Plaintiff's notes, which it acquired in 2003 and which was allegedly recognized in the Venezuelan Attorney General's 2003 opinion acknowledging the notes' validity. Woodstrite claims that it has attempted to protect its interest in these notes by filing actions in Switzerland against Venezuela and the prior holders of the notes, and that Plaintiff in this case has not recognized its interest and that Plaintiff "has committed acts of conversion and [tortious] interference with Woodstrite's contractual relationship with" the previous holders. (Id. at p. 5.) Although Plaintiff has not acknowledged Woodstrite's alleged interest since the inception of this action, Woodstrite did not file its motion to intervene until June 25, 2009.

## II. Motions to Intervene

### A. Applicable Law

Federal Rule of Civil Procedure 24 establishes two different types of intervention: intervention as of right and permissive intervention. A court must allow a party to intervene as of right pursuant to Rule 24(a) when the proposed intervenor establishes that

4

> (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

Coalition to Defend Affirmative Action v. Granholm, 501 F.3d 775, 779 (6th Cir. 2007). All four of these elements must be established for a party to be entitled to intervention as of right. Grubbs v. Norris, 870 F.2d 343, 345 (6th Cir. 1989).

Courts may also, in their discretion, permit parties to intervene permissively pursuant to Rule 24(b). A proposed permissive intervenor must establish 1) that the motion is timely, and 2) that the proposed intervenor is asserting a claim that shares a common question of law or fact with the main action. If these two requirements are met, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." United States v. Michigan, 424 F.3d 438, 445 (6th Cir. 2005).

The required showings for intervention as of right and permissive intervention share a common element: timeliness. "Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." NAACP v. New York, 413 U.S. 345, 365–66 (1973). Courts in the Sixth Circuit look to five factors to determine whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating

5

against or in favor of intervention.

Grubbs, 870 F.2d at 345; see also Stupak-Thrall v. Glickman, 226 F.3d 467, 473 (6th Cir. 2000).

### B. Venospa and Latin-Consult

Venospa moves for both intervention as of right and permissive intervention. (Doc. # 158.) It argues that intervention as of right is appropriate because the case has not progressed past the issues of subject matter jurisdiction, sovereign immunity, and forum non conveniens; Latin-Consult has a significant interest in those issues; its rights in their notes may be impaired if they are not made parties; and Plaintiff cannot adequately protect those interests. Venospa also argues that permissive intervention is appropriate because common issues of law and fact exist between its claims and Plaintiff's claims, because no prejudice or delay will result, and because allowing intervention will promote judicial economy. Venospa and its principal Latin-Consult seek to intervene not only in the proceedings before this Court, but also ask the Court to certify that its rulings on the sovereign immunity and forum non conveniens issues apply to them and to grant them permission to participate in the interlocutory appeal currently pending before the Sixth Circuit. (Id. at p. 10.) Additionally, Venospa and Latin-Consult filed a Motion to Intervene directly in the Sixth Circuit proceedings on September 14, 2009, which was denied by the Court of Appeals on October 30, 2009. DRFP LLC, dba Skye Ventures v. Republica Bolivariana de Venezuela, Nos. 09-3424/3725, Order (Oct. 30, 2009).

The first timeliness factor is the point to which the suit has progressed. Venospa is correct in stating that superficially this case has not progressed beyond the threshold issues of subject matter jurisdiction and forum non conveniens, but it does not follow that this is a basis for granting intervention in this long-standing litigation. This is not a case involving ordinary, well-established

6

rules and precedents. It involves very complex issues involving the interpretation and application of a treaty of the United States as well as issues of forum non conveniens as between the Plaintiff and the government entities of Venezuela. These issues have taken years to resolve, and this case has progressed much further than the ordinary case involving a simple motion to dismiss. The case, indeed, has progressed to the point where it is now pending on an appeal by the Defendants in the Sixth Circuit Court of Appeals, certainly not an ordinary case in which a non-party seeks to intervene while the case is still in its infancy and nothing of consequence has happened. It is important to note that a basic purpose of the motions to intervene—as the proposed intervenors acknowledge—is to enable them to participate with the Plaintiff as appellees in the pending appeal. It is significant, therefore, to note that the motion of Venospa and Latin-Consult to intervene in the pending appeal was denied by the Sixth Circuit on October 30, 2009. Consequently, the first factor does not weigh in favor of timeliness.

The second factor—the purpose for which intervention is sought—also does not weigh in favor of timeliness. "The 'purposes of intervention' prong of the timeliness element normally examines only whether the lack of an earlier motion to intervene should be excused, given the proposed intervenor's purpose—for example, when the proposed intervenor seeks to intervene late in the litigation to ensure an appeal." Stupak-Thrall, 226 F.3d at 479 n.15 (citing Triax Co. v. TRW, Inc., 724 F.2d 1224, 1228 (6th Cir.1984); United Airlines, Inc. v. McDonald, 432 U.S. 385, 392 (1977)) (emphasis in original). The purpose of the motion to intervene in the present case is obvious. Latin-Consult waited until it could be assured a favorable ruling by this Court on the critical issue of subject matter jurisdiction before attempting to become a party-plaintiff. Also, a major purpose was to be made a party so that it could be joined with the Plaintiff as an appellee in the pending

7

appeal before the Sixth Circuit Court of Appeals.

At the outset, it should be noted, however, that only Venospa has moved to intervene in this case. Yet Venospa has admitted that it does not own any of the notes and that it is only acting as the "collection agent" for Latin-Consult. The fact that Venospa is merely a "collection agent," apparently with no legal or equitable interest in the notes in question, is alone a sufficient basis for denial of its motion under the criterion earlier discussed.

Further, even if Latin-Consult had properly filed a motion to intervene, its alleged purpose in doing so—to avoid duplicative or piecemeal litigation and to solve similar or common issues in one proceeding—is not convincing. This purpose should have motivated a Motion to Intervene by Latin-Consult "as soon as it [became] reasonably apparent that [Latin-Consult was] entitled to intervene," U.S. v. Tennessee, 260 F.3d 587, 594 (6th Cir. 2001), which was over five years ago, when this Complaint was filed. Latin-Consult has given the Court no information whatsoever as to how long it has held these notes before seeking to intervene in this litigation, and it appears to the Court that the basic purpose of the motion is an attempt to capitalize on this Court's rulings on the forum non conveniens and sovereign immunity aspects of Defendants' Motion to Dismiss without any explanation as to why it has delayed so long to attempt to intervene. As a result, the second prong of the timeliness inquiry does not weigh in favor of intervention.

Venospa and Latin-Consult also cannot demonstrate that the third factor, the length of time preceding the motion during which they knew or should have known of their interest in the case, weighs in favor of timeliness. Venospa and Latin-Consult assert that their interests in this case are 1) the "common jurisdictional issue of whether Defendants may be sued in" this Court; 2) the disposition of Defendants' claim that both Plaintiff's and their notes are fraudulent; and 3) the

Court's interpretation of the Venezuelan Attorney General's 2003 opinion. (Reply p. 8, doc. # 174.) According to Venospa and Latin-Consult, these interests were not implicated until the Court, on April 1, certified the forum non conveniens issue for an interlocutory appeal alongside Defendants' appeal as of right of the sovereign immunity issue, and until Defendants moved for a stay of proceedings in this Court. Venospa and Latin-Consult further argue that they moved promptly to protect their interests by filing their motion a day after Defendants' Motion to Stay. (Mot. Intervene pp. 2, 5–6, doc. # 158.) The Court is not persuaded.

As noted above, Defendants placed the issues of subject matter jurisdiction, the notes' validity, and the proper interpretation of the 2003 Attorney General opinion into question over four years ago when they moved to dismiss this case (doc. # 13.), but Venospa and Latin-Consult have given no information whatsoever as to when Latin-Consult obtained its interest in these notes. It may have held them since the commencement of this litigation, in which case they would have waited over five years to attempt to intervene. Their interests were implicated by the issues raised by the filing of Plaintiff's Complaint and, more sharply, by Defendants' motion to dismiss.

On the other hand, if Latin-Consult acquired the notes at some point after the Defendants' Motion to Dismiss was filed, their interests were implicated by that pending motion at the moment they obtained their interests. If they acquired their interests only recently, the Court may be inclined to find that this third prong weighs in favor of timeliness, but because Venospa and Latin-Consult have not alleged that Latin-Consult has owned the notes for only a short period of time—perhaps because they cannot so allege—the Court cannot find that the third prong weighs in favor of timeliness.

The fourth factor, prejudice to the original parties due to the proposed intervenor's failure promptly to move for intervention, weighs against timeliness. This is a complex case that has taken years to move even beyond the threshold issue of jurisdiction. Adding additional parties with distinct claims, even if the claims are similar, would further complicate an already complex case and could unduly prolong this litigation to the prejudice of the Defendants.

Finally, the fifth factor, the existence of unusual circumstances, clearly militates against intervention. Venospa attempts to insert itself into this litigation, particularly because of the pending interlocutory appeal by the Defendants. In this Court's February 13, 2009 Opinion finding subject matter jurisdiction, this Court relied on the fact that Plaintiff, an Ohio corporation, had made a demand for payment on the notes from a location in the Southern District of Ohio. Such a demand was critical to finding subject matter jurisdiction, because Defendants' failure to pay on the notes caused a direct effect in the Southern District of Ohio that supported subject matter jurisdiction, as money that was supposed to be delivered at a bank in this district did not arrive. DRFP L.L.C. v. The Republica Bolivariana de Venezuela, et al., 2009 WL 414581, at *8.

Since acquiring its notes, Latin-Consult, a Swiss corporation, has attempted to collect on its notes elsewhere, not in this district or in the United States. Absent a demand for payment in the Southern District of Ohio this Court would have no jurisdiction over Latin-Consult's claims, because Defendants' failure to pay on Latin-Consult's notes elsewhere created no direct effect in this district. Seeking to establish a direct effect in this district and create subject matter jurisdiction in this Court over its own claims, however, Latin-Consult assigned its collection rights in its notes to Venospa, a newly formed entity with no prior connection to this judicial district, and, as noted earlier, an entity that does not claim any legal or equitable ownership in the notes in question and one that does not

meet the criteria for intervention in this litigation.

For the above reasons, in the context of all the relevant circumstances of this case, the Court finds that Venospa's Motion to Intervene is untimely. Although the case superficially has not progressed to proceedings on the merits, none of the factors weighs in favor of a finding of timeliness. Because a proposed intervenor must bear the burden of proving timeliness and because Venospa and Latin-Consult cannot establish that their Motion to Intervene is timely, neither intervention as of right nor permissive intervention is appropriate.

### C. Woodstrite

Woodstrite, like Venospa, moves for both intervention as of right and for permissive intervention. (Doc. # 172.) In support of intervention as of right, Woodstrite argues that its alleged 25.11% ownership interest in Plaintiff's notes gives it a substantial interest in the subject matter of this case, that Plaintiff has failed to protect that interest, and that its interest will be impaired unless it is made a party.

Woodstrite seeks to intervene not only in the proceedings before this Court, but also requests that the Court certify that its earlier rulings apply to it and that the Court grant it permission to participate in Defendants' pending interlocutory appeal. Just as with Venospa's Motion, the Court finds that neither intervention as of right nor permissive intervention is appropriate because Woodstrite's Motion is untimely.

For many of the same reasons discussed in connection with Venospa's Motion, the factors for intervention weigh against timeliness. Woodstrite's alleged purpose in moving to intervene is to protect its asserted 25.11% ownership interest in Plaintiff's notes, but this purpose, if legitimately the only purpose behind Woodstrite's motion, should have motivated a Motion to Intervene "as soon

11

as it [became] reasonably apparent that [Woodstrite was] entitled to intervene." U.S. v. Tennessee, 260 F.3d 587, 594 (6th Cir. 2001). Woodstrite, however, has apparently owned this alleged interest in Plaintiff's notes since the inception of this suit, and therefore had the motivation to intervene to protect this alleged interest since 2004. The lack of an earlier intervention motion cannot be excused given that Woodstrite's claimed purpose for intervening has existed for more than five years. See Stupak-Thrall, 226 F.3d at 479 n. 15.

Furthermore, aside from belying Woodstrite's purpose for intervening, the length of time Woodstrite has known of its interest in this case is of critical importance. Woodstrite acknowledged the existence of this suit in the complaint it filed in Switzerland on August 31, 2004 (doc. 196-10, at 11), yet it is only now moving to protect that interest. Woodstrite argues that it has not moved to intervene previously because it believed that the Swiss action adequately protected its rights in Plaintiff's notes. According to Woodstrite, it was not until this Court concluded that it had subject matter jurisdiction over Plaintiff's claims that its interest was implicated, as a judgment for Plaintiff in this Court could impair Woodstrite's ability to enforce its 25.11% ownership interest through its Swiss litigation (Mot. Intervene p. 7-8, doc. # 172.), but this is not the case. The possibility that Plaintiff would ultimately recover on the notes before Woodstrite's Swiss action had concluded existed at the time Plaintiff filed suit and has potentially implicated Woodstrite's interests in the notes ever since then. Although Woodstrite argues that it is moving now to avoid taking a "wait and see" approach, that is precisely what Woodstrite has done up until this point. Rather than moving to intervene when the case was first filed, Woodstrite has sat on the sidelines and waited to see the result of Plaintiff and Defendants' litigation of the jurisdictional issues to be sure that the outcome would be favorable to Woodstrite before it moved to intervene.

Consequently, the Court finds, in the context of all the circumstances of the case, that Woodstrite's Motion to Intervene is untimely. Because Woodstrite cannot establish timeliness, both intervention as of right and permissive intervention are inappropriate.

### III.     Motion to Stay

After filing their notice of appeal, Defendants moved to stay the proceedings before this Court. (Mot. Stay, doc. # 157.) Plaintiff represents that while it does not oppose a stay of actual trial proceedings during the pendency of the appeal, Plaintiff does oppose any stay of discovery. Plaintiff argues that a stay is inappropriate because Defendants will not be injured by continuing discovery, and that a stay will in fact injure Plaintiff because important evidence, in the form of witness testimony, may be lost during the stay period. (Pl. Resp. pp. 1-3, doc. # 165.)

Despite Plaintiff's arguments, the Court grants Defendants' motion. Defendants will in fact be injured by allowing discovery to continue, because the sovereign immunity at issue in this case is an immunity from legal action and proceedings altogether. Forcing Defendants to participate in court-ordered discovery will deprive Defendants of this immunity. The Sixth Circuit and other courts within the circuit have also recognized that proceedings in a district court should be stayed while sovereign immunity issues are on interlocutory appeal. See Kennedy v. City of Cleveland, 797 F.2d 297, 299 (6th Cir. 1986); O'Bryan v. Holy See, No. 3:04-cv-338, 2008 WL 4657986 at *1 (W.D. KY Oct. 21, 2008). A stay of proceedings in this Court is warranted while Defendants' interlocutory appeal is pending in the Sixth Circuit.

### IV.     Conclusion

For the reasons stated above, Venospa's Motion to Intervene (doc. # 158) is **DENIED**; Woodstrite's Motion to Intervene (doc. # 172) is **DENIED**; and Defendants' Motion to Stay (doc.

# 157) is **GRANTED**. Defendants have also filed a Motion for Leave to File Two Page Supplemental Brief Regarding Motion to Stay. (Doc. 159.) Because the Motion to Stay is granted, this Motion is **DENIED** as moot.

**IT IS SO ORDERED.**

Date: **November 9, 2009**  **/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court