## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DRFP, LLC,

        Plaintiff,

        v.

THE REPUBLICA BOLIVARIANA
DE VENEZUELA, *et al.*,

        Defendants.

Case No. 2:04-cv-00793
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Terence P. Kemp**

### OPINION AND ORDER

This matter is before the Court for consideration of Defendants the Bolivarian Republic of Venezuela and the Venezuelan Ministry of Finance's ("Defendants") request for dismissal pursuant to the doctrine of *forum non conveniens*. (*See* ECF Nos. 13, 136, 253.) Defendants maintain that Venezuela is a more appropriate forum for this dispute. For the reasons that follow, Defendants request for dismissal on the grounds of *forum non conveniens* is **DENIED**.

### I. Background

Plaintiff, DRFP, LLC dba Syke Ventures, is a Columbus, Ohio based limited liability company. David Richards ("Richards") founded, owns, and operates Plaintiff. Plaintiff brings this action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, asserting claims against Defendants for default on promissory notes; estoppel/detrimental reliance; breach of contract; promissory estoppel; and negligence. Plaintiff seeks judgment against Defendants in the amount of $100,000,000.00 plus accrued interest.

The action centers around two promissory notes, the legitimacy of which are in dispute. Plaintiff maintains that in December 1981 Banco Desarrollo Agropecuario SA ("Bandagro"), a

state-owned bank, issued a series of bearer promissory notes, including the two notes at issue in this case. (Am. Compl. ¶ 7, ECF No. 147.)  The two notes were to mature in December 1991, although Plaintiff asserts that the Minister of Hacienda (precursor to the current Minister of Finance) later extended this date until December 1999.  The terms of the notes in question provide that the Minister guaranteed, and the state backed, payment of the notes.  (*See* Am. Compl. Exs. 1A, 1B, ECF No. 147.)  Additionally, the notes include a provision stating that the laws of Switzerland will govern their terms and conditions.[1]  (*Id.*)

Gruppo Triad-FCC SPA ("Gruppo"), a Panamanian corporation, acquired the two notes in question.  After Gruppo demanded payment on the notes, the Venezuelan Ministry of Finance began an investigation.  Plaintiff submits that in October 2003, following investigation, the Venezuelan Attorney General issued an opinion concluding that the notes at issue were valid and legally binding.  Plaintiff asserts that based on this decision, it acquired the two notes from Gruppo.  Plaintiff demanded payment from Columbus, Ohio in August 2004.  Following Defendants refusal to honor the notes, Plaintiff brought the instant action.

Defendants assert that the notes in question are forgeries.  They specifically question the conduct of James Paolo Pavanelli ("Pavanelli"), the CEO and President of Gruppo.  Defendants submit that even before Plaintiff acquired the notes in question, Pavenelli had already been convicted twice—in England and Italy— for trading in false Bandagro notes.  Moreover, Defendants stress that since 1981, Venezuelan government officials have conducted numerous investigations into the validity of Bandagro notes.  According to Defendants, these investigations

---

[1] On their face, the notes also provide that they are governed by the International Chamber of Commerce as well as the United States Council of the International Chamber of Commerce Brochure 322.  (Am. Compl. Exs. 1A, 1B.)

have revealed that the Bandagro notes were forgeries.  Additionally, Defendants provide that Venezuela has issued several alerts warning the public that such notes are invalid.

Defendants also challenge Plaintiff's reliance on the October 2003 Attorney General opinion.  Defendants characterize the Attorney General's opinion as a "non-public, inter-agency letter . . . ." (Defs.' Supp'l Br. Supp. Dismissal 7, ECF No. 253.)  Defendants emphasize that the Attorney General withdrew this opinion shortly thereafter finding that government officials had overlooked evidence.  Moreover, Defendants stress that in July 2007, the Venezuelan Supreme Court issued an interpretative opinion finding that opinions of the type the Attorney General issued in October 2003 are consultive in nature, as opposed to binding, and do not create private individual rights.  (*See* Ex. B at 23, ECF No. 118-3 (English translation).)

On February 13, 2009, the Court through Judge John D. Holschuh, now deceased, issued an Opinion and Order denying Defendants Motion to Dismiss based on a lack of subject matter jurisdiction and *forum non conveniens*.  The Court specifically held that it had subject matter jurisdiction pursuant to FISA's commercial activity exception.  Additionally, the Court concluded that Venezuela was not an available forum because the Venezuelan Supreme Court's 2007 decision "would not permit litigation of one of the essential issues of Plaintiff's complaint." (Opinion & Order 20, ECF No. 144.)  Defendants appealed the Court's decision and the United States Court of Appeals for the Sixth Circuit issued an Opinion on September 23, 2010.  *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513 (2010).  The Sixth Circuit affirmed this Court's holding as to subject matter jurisdiction, but reversed the Court's decision as to *forum non conveniens.  Id.* at 520.  The Sixth Circuit held that the Venezuela Supreme Court decision did not render Venezuela "unavailable and inadequate as a matter of law" and remanded

3

for a "full consideration of the question whether the doctrine of *forum non conveniens* applies." *Id.*

Following remand, the parties submitted supplemental briefing on the issue of *forum non conveniens*.[2] Defendants maintain that both private and public interest factors weigh heavily in favor of dismissal. Defendants contend, in part, that the majority of documents and witnesses in this case are located in Venezuela; that the evidence will be primarily in Spanish; that many witnesses are not subject to the compulsory process of the Court; and that Venezuela has a strong interest in this case. Plaintiff, on the other hand, asserts that Defendants have failed to meet their burden of overcoming the strong presumption in favor of its selected forum. Additionally, Plaintiff contends that Venezuela is not an adequate forum because of Venezuela's prosecution of those who seek payment on Bandagro notes and because of the inherent biases within Venezuela's judiciary system.[3]

## II. Standard

Considering whether to dismiss a case pursuant to the doctrine of *forum non conveniens* involves a two-step analysis. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008). "The first step in the *forum non conveniens* analysis is establishing an adequate alternative forum." *Id.* "The second step requires a balance of private and public factors listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct.

---

[2] Within their Supplemental Briefs, the parties submit detailed contentions, and supporting evidence, regarding the relevant *forum non conveniens* balancing factors. The Court will provide a more thorough review of the parties assertions below when assessing the various factors.

[3] In Reply, Defendants contend that any inquiry into adequacy is improper in light of the Sixth Circuit's decision and instructions for remand.

839, 91 L.Ed. 1055 (1947) . . . to determine whether a trial in plaintiffs' chosen forum would be

unnecessarily burdensome for the defendant or the court." *Id.* The defendant carries the burden

of establishing both of these requirements. *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A.*

*de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010); *cf. also Piper Aircraft Co. v. Reyno*, 454 U.S. 235,

258 (1981) (holding that although extensive investigation is not required at the *forum non*

*conveniens* stage, "defendants must provide enough information to enable the District Court to

balance the parties' interests").

      With regard to the *Gulf Oil* factors, private interests include the "relative ease of access to

sources of proof; availability of compulsory process for attendance of unwilling, and the cost of

obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of

a case easy, expeditious and inexpensive." *Estate of Thompson*, 545 F.3d at 364 (quoting *Gulf*

*Oil*, 330 U.S. at 508). Public interests include "local interest in the litigation, and the law

applicable to the controversy." *Zions*, 629 F.3d at 523.

      In considering *forum non conveniens* dismissal, "a district court must apply a strong

presumption in favor of a plaintiff's selected forum, particularly if the forum is the home of the

plaintiff, because 'it is reasonable to assume that this choice is convenient.'" *Id.* at 523–24. As

the Sixth Circuit has described, "[i]n general, the standard of deference for a U.S. plaintiff's

choice of a home forum permits dismissal only when the defendant 'establish[es] such

oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's

convenience, which may be shown to be slight or nonexistent.'" *Duha v. Agrium, Inc.*, 448 F.3d

867, 873–74 (6th Cir. 2006) (quoting *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518,

524 (1947) (alteration in original)); *but see Barak v. Zeff*, 289 F. App'x 907, 911 (6th Cir. 2008)

("Oppressiveness and vexation, however, are no longer absolute prerequisites for dismissal on the ground of *forum non conveniens*.") (citing *Koster*, 330 U.S. at 524).

"While deference should be afforded to a U.S. plaintiff's choice of home forum, choice of home forum is not a dispositive issue." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 833 (6th Cir. 2009). Moreover, "[w]hen the plaintiff's choice of forum . . . is not the home of the plaintiff, the normally applicable assumption that the forum choice is convenient carries significantly less weight." *Zions*, 629 F.3d at 524. Similarly, the Sixth has implied that deference is lessened "when the 'real party in interest' is a foreign entity . . . ." *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 338 (6th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

Ultimately, "'[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court.[']" *Barak*, 289 F. App'x at 910 (quoting *Piper*, 454 U.S. at 257). The doctrine of *forum non conveniens* "is a flexible one, requiring the court to weigh multiple factors relating to fairness and convenience based on the particular facts of the case." *Rustal*, 17 F. App'x at 335. Nevertheless, in considering whether the *Gulf Oil* factors, the Court must consider how "all [of the] factors appl[y] to each analytically distinct set of claims."[4] *Duha*, 448 F.3d at 879.

## III. Analysis

Although Plaintiff challenges whether Venezuela is an adequate forum, the Court finds it unnecessary to reach this issue. Even assuming that Venezuela is an adequate alternative forum,

---

[4] Here, Plaintiff brings claims based on contract theories, centering on the legitimacy of the notes in question, and promissory theories, concerning the effect of the Venezuelan Attorney General's 2003 opinion. Given the parties' representations regarding the evidence and interests at stake, the Court finds that the *forum non conveniens* analysis is largely similar under either theory. Tellingly, neither party discusses the *Gulf Oil* factors on a claim by claim basis.

6

the Court finds that Defendants have failed to meet their burden for the second inquiry. First, the

Court finds that it must apply a strong presumption in favor of Plaintiff's forum selection.

Second, considering the relevant private and public factors, Defendants have not overcome the

deference due to Plaintiff's choice of forum.[5]

## A.    Deference to Plaintiff's Forum Selection

Before applying the *Gulf Oil* private and public interest factors, the Court must assess the

proper level of deference to give to Plaintiff's choice of forum. The parties dispute whether,

under the circumstances of this case, Plaintiff is entitled to the ordinary level of deference that

the Court gives to a U.S. plaintiff.

Defendants maintain that Plaintiff's choice of forum is not entitled to deference.

According to Defendants, although Plaintiff is an Ohio corporation it is representing foreign

interests in this lawsuit. Defendants contend that Plaintiff's principal business is holding the

Bandagro notes in question and pursuing this lawsuit.[6] Defendants provide the testimony of Siro

Schianchi ("Schianchi"), a Swiss attorney for Pavanelli, taken before a Swiss Public Prosecutor.

(*See* Mins. Schianchi Test., ECF No. 253-2.) Schianchi testified to having knowledge of the note

transfer between Grupo and Plaintiff. (*Id.* at 4.) According to Schianchi, Pavanelli contacted

Plaintiff and agreed to transfer the notes at issue with the understanding that Plaintiff would file a

lawsuit in Columbus. (*Id.*) Schianchi further testified that Richards traveled to Italy to meet with

---

[5] In drawing this conclusion, the Court has considered all of the factors that the Supreme Court listed in *Gulf Oil*. Nevertheless, the Court will focus its analysis on the factors the parties discussed in briefing, which are particularly relevant to this dispute.

[6] To support these contentions, Defendants cite to a portion of Plaintiff's website focusing on Bandagro notes and efforts to enforce the notes. (*See* Tab C, ECF No. 106-23.)

Pavanelli to discuss the final contract.[7]  (*Id.*)  Schianchi estimated that Pavanelli transferred the

two notes for between $400,000.00 and $500,000.00.  (*Id.*)  Schianchi further testified that the

contract between Plaintiff and Grupo established that Plaintiff would receive 33% of any

litigation recovery and Grupo would receive 33% of any recovery, with lawyers receiving the

remaining portion.[8]  (*Id.*)

      Plaintiff, on the other hand, contends that it is entitled to the normal deference the Court

affords to a U.S. plaintiff's choice of forum.  In support of this contention, Plaintiff relies

primarily upon the Affidavit of David Richards.  Richards states that he created Plaintiff before

he knew of the Bandagro notes at issue in this litigation.  (Richards Aff. ¶ 15.)  Richards avers

that Plaintiff is an Ohio limited liability company with both its offices and registered agent in

Columbus, Ohio.  (*Id.* at ¶¶ 12, 14; *see also* Richards Aff. Ex. A.)  According to Richards,

Plaintiff ultimately purchased the notes from Gruppo in its Columbus office.  (Richards Aff.

¶ 20.)  Moreover, Plaintiff stresses that it holds the notes in Columbus, Ohio; sent its demand for

payment from Columbus, Ohio; and requested that Defendants send payment to Columbus, Ohio.

(*See id.* at ¶¶ 20, 22.)

      After considering the circumstances above, the Court finds that it must give Plaintiff the

deference typically granted to U.S. Plaintiffs.  As the Sixth Circuit has suggested, the standard

deference in favor of a plaintiff's selected forum presumptively applies to a U.S. plaintiff's

--------

[7]  Schianchi was apparently present during a portion of this meeting.  (*See* Mins. Schianchi Test. 4.)

[8]  Defendant also maintains that there are other foreign persons and entities that have potential interests in the notes.  For example, Woodsrite Investments Limited, a foreign company, claims a 25.11% interest in the notes in question here, and is litigating the matter in Switzerland.  (*See* Mins. Quadranti Test. 4, ECF No. 253-4.)

choice of forum. *Zion*, 629 F.3d at 524. In this case, not only is Plaintiff a United States company, it is based within this District. Moreover, the evidence demonstrates that Plaintiff has a significant interest in this suit, and is not merely representing foreign parties. Even accepting Schianchi's testimony as accurate, Plaintiff still holds approximately a 33% stake in any recovery from this lawsuit. Given the potential value of the notes at stake, if ultimately legitimate, the Court can easily conclude that Plaintiff has a significant interest in this lawsuit independent from any potential obligations to foreign third-parties.

In reaching this conclusion, the Court finds the circumstances of this case distinguishable from the circumstances of *Rustic*. In *Rustic*, the Sixth Circuit found that the district court "was not required to defer to Rustal's choice of forum in this case, inasmuch as Rustal is, for all intents and purposes, a foreign plaintiff." 17 F. App'x at 338. The plaintiff in Rustal was a subsidiary of an Ireland based corporation, formed only for the purpose of bringing a lawsuit in the United States, with no independent interest in the suit apart from its parent corporation. *Id.* at 333, 338 n.6. Here, however, as outlined above, Plaintiff has an independent stake in this lawsuit and is not merely representing a foreign entity. Accordingly, the Court finds no reason to stray from the general deference it must typically allow to the forum choices of U.S. plaintiffs.

**B.     *Gulf Oil* Factors**

Moving to the public and private interests, Defendants maintain that such interests weigh heavily in favor of dismissal. Plaintiff contends that the various private and public interests, when viewed in light of the strong presumption in favor of its chosen forum, do not weigh in favor of dismissal. The Court will first assess the relevant private interests including the access to documents and evidence, the availability of witnesses, and other practical considerations.

Second, the Court will address the public interests, primarily the potential forums' interest in the controversy as well as the applicable law. Ultimately, the Court finds that although some factors do favor a Venezuelan forum, Defendants have not overcome the strong presumption in favor of Plaintiff's selected forum.

### 1. Private Interests

#### a. Access to Documents

Defendants emphasize that the location of documentary evidence favors a Venezuelan forum. For example, Defendants stress that documents surrounding the Venezuelan governments numerous investigations, reports, and alerts concerning Bandagro notes are all located in Venezuela.[9] Defendants also maintain that documentation relating to the Attorney General' s October 2003 opinion are located in Venezuela. Defendants suggest that although they have produced some documentation in the limited jurisdictional phase of this action, they expect merits discovery to involve additional, and extensive, documentation.

Plaintiff, for its part, contends that documentary evidence is not a significant factor under the circumstances of this case. Plaintiff specifically asserts that this is not a document intensive case and that Defendant has already produced many relevant documents. Additionally, Plaintiff suggests that in light of modern technology, the location of documentary evidence is a relatively insignificant factor in the overall analysis.

The Sixth Circuit has recognized that the Court must consider the location of documents in considering the ease of access to sources of proof. *Duha*, 448 F.3d at 876 ("Access to

---

[9] Defendants further indicate that evidence will consist of not only primary documents, but also secondary documentation as well as internal government correspondences.

non-witness sources of proof, including documents in particular, is properly considered as part of

the ease-of-access factor."). Moreover, various cases have recognized this factor as supporting

dismissal on *forum non conveniens* grounds. *See, e.g.*, *Estate of Thomson*, 545 F.3d at 366

(holding that private interests factors favored dismissal in part because relevant documents were

located in South Africa); *cf. also Barak,* 289 F. App'x at 912 ("The district court's inability to

compel foreign third-parties to produce these documents also cuts in favor of dismissal.").

Nevertheless, the Sixth Circuit has also suggested, at least under certain circumstances, that

requiring a foreign defendant to ship documents to the United States is not vexatious or

oppressive. *Duha*, 448 F.3d at 876; *see also DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30

(2nd Cir. 2002) ("The defendants have failed to explain how transporting the documents or

copies of them would be 'oppressive' or 'vexatious,' nor does the district court offer a

satisfactory explanation.").

     The Court finds that this factor favors a Venezuelan forum to a limited degree.

Defendants represent, and Plaintiff does not seriously challenge, that the majority of documentary

evidence is located in Venezuela. Such a conclusion makes sense due to the nature of Plaintiff's

claims. At the same time, however, it is difficult to give this factor a substantial amount of

weight. Even crediting Defendants assertions that there is extensive documentation that they

have not yet produced, given the nature of these documents—relating to government

investigations, reports, and alerts—it would appear that the vast majority of these documents

would be under Defendants' control and would not have to be compelled from any third party.

Moreover, Defendants do not explain in any specific detail why transportation of these

documents to the United States will be overly costly or burdensome.[10]

### b.    Availability of Witnesses

The parties also dispute how the availability of witnesses should impact the Court's

analysis.  Defendants assert that the vast majority of relevant witnesses are located in Venezuela.

Additionally, Defendants stress that most of the potential witnesses that they are aware of are no

longer affiliated with the government and are, therefore, outside the compulsory process of the

Court.  Defendants specifically identify twelve individuals, consisting of both former government

officials and private citizens, whom they expect to possess relevant information with regard to

this action.  (Defs.' Supp'l Br. Supp. Dismissal 12 n.13.)  Additionally, Defendants emphasize

that Plaintiff's discovery requests suggest that it will seek depositions from four additional non-

party Venezuelan nationals.  Defendants also stress that the three individuals who purportedly

signed the promissory notes are non-party Venezuelan citizens.  Finally, Defendants submit that

even if these witnesses are willing to testify, the expense of transporting these witnesses will be

substantial.

Plaintiff asserts that while there are Venezuelan witnesses in this case, there are also

several important witnesses who are outside Venezuela.  Plaintiff submits that such witnesses

include, Richards; Alfredo Aagaard, who allegedly witnessed the execution of the notes; Warren

Haught, who purportedly had discussions with Venezuelan officials regarding the legitimacy of

Bandagro notes; and experts on various issues including handwriting, Swiss law, and

international banking.  A few of these witnesses, most notably Richards and Haught, reside in the

---

[10] Defendants further maintain that these documents will require translation from Spanish
to English.  The Court will address this issue in assessing other relevant private interest
considerations.

United States.  The other witnesses appear to reside in various locations in Europe.  Plaintiff

contends that some of the potential witnesses—Richards, Haught, and three of Plaintiff's

experts—are unwilling to testify in Venezuela because of actions that the government has taken

against individuals seeking collection on Bandagro notes.[11]  (*See, e.g.*, Richards Aff. ¶¶ 26–30;

Haught Aff. ¶¶ 11–12; Aff. Fabbiani ¶¶ C–E, ECF No. 258-5.)  Finally, Plaintiff emphasizes that

Defendants have not produced any evidence that the witnesses they have identified would be

unwilling to testify.[12]

     The Court finds that the availability and cost of procuring witnesses both weigh in favor

of a Venezuelan forum.  Given that this case centers around the legitimacy of Venezuelan

promissory notes and a 2003 opinion of the Venezuelan Attorney General, it appears that a

number of witnesses, especially fact witnesses, will be located in Venezuela.  Furthermore,

Defendants have already been able to identify some non-party witnesses who do not appear to be

---

[11]  In challenging the adequacy of Venezuela as a forum, Plaintiff provides some evidence suggesting that Venezuela has arrested individuals in possession of Bandagro notes.  For example, Plaintiff relies heavily on the deposition testimony of Walderman Cordero Vale ("Cordero"), one of the individuals who purportedly signed the notes.  Cordero testified that "in Venezuela, there is an order to arrest anyone who is in possession of" fake notes.  (Dep. Cordero 88:20–22, ECF No. 257.)  Additionally, one of Plaintiff's potential witnesses, Haught, indicates that he was detained for over a week when he traveled to Venezuela to discuss settlement of Bandagro notes not at issue in this case.  (Aff. Haught ¶¶ 2–4, ECF No. 258-4.)  Defendants counter that there is nothing improper with enforcing criminal forgery laws, and that there is no indication that the Venezuelan government intends to take adverse action against individuals involved in this case.

[12]  Plaintiff also maintains that even if such witnesses are unwilling, the Court could compel testimony through the Hague Convention.  The Court finds this argument unpersuasive.  Even assuming that the Hague Convention creates the possibility for compulsory process, the Court cannot ignore the difficulty and cost of employing such procedures.  *See Estate of Thomson*, 545 F.3d at 366 (holding that "[e]ven assuming compulsory process may be obtained" through the Hague Convention, "the cost of procuring evidence and willing witnesses from South Africa would be prohibitively expensive").

within the compulsory power of the Court. Moreover, although the Court would expect costs in this case to be substantial regardless of the forum, on the whole, it does appear that the cost of transporting witnesses will be higher if the case remains in this forum.

   While the Court finds that this factor weighs in favor of Defendants, there are qualifications to this finding. First, although Defendants identify Venezuelan witnesses outside the Court's compulsory process, they do not allege—or provide any evidence to suggest—that any specific witness is unwilling to testify in the United States. The Court recognizes that at this stage in proceedings, prior to merit discovery, it would be unrealistic to expect Defendants to compile an exhaustive list of potential witnesses and be able to have a detailed account of those who are unwilling to testify. *Cf. Estate of Thomson*, 545 F.3d at 366 ("The fact that witnesses were not specifically identified is not fatal to a finding that a dismissal on forum non conveniens grounds is proper."). The weight of the compulsory process factor, however, is reduced when a party fails to identify unwilling witnesses. *See Duha* 448 F.3d at 877 ("Here [the defendant] did not allege, much less carry its burden to show, that any witness was unwilling to testify and that compulsory process was consequently needed.").

   Here, Defendants suggest that given the number of potential Venezuelan non-party witnesses it is natural to presume that some of these witnesses will be unwilling to testify. On the other hand, given that the bulk, if not all, of the Venezuelan witnesses at issue share some past or current employment connection with the Venezuelan government, it is also not unreasonable to presume that such witnesses would comply with Defendants requests for testimony. Additionally, as Plaintiff stresses, the record reflects that the purported signers of the two notes in question have willingly traveled abroad to testify regarding related matters in the

14

past. (*See, e.g.*, Dep. Cordero 104:12–24, 154:10–18; Dep. Fontana 56:12–20, ECF No. 256.)

Moreover, one of the non-party witnesses Defendants identify, Miguel Jacir Hernandez, has

explicitly provided that he is willing to testify in the United States. (Aff. Jacir ¶ 8, ECF 258-3.)

Under these circumstances, and given Defendants failure to allege the presence of any specific

unwilling witnesses, the weight given to the lack of compulsory process over potential

Venezuelan witnesses is reduced.

      In considering the weight to give to the availability of witnesses, the Court also

recognizes that the United States would be a more convenient forum for at least some of

Plaintiff's witnesses.  Plaintiff highlights that some witnesses are located in the United States and

Europe, and further provides that five of its witnesses, including Richards, would not be willing

to testify in Venezuela due to fear of arrest or other adverse action.  The Court notes that four of

these witnesses are Plaintiff's employees or experts, making their willingness perhaps less

important to the Court's analysis.[13]  *See, e.g., Iragorri v. International Elevator, Inc.*, 203 F.3d 8,

17 (1st Cir. 2000) (suggesting "that the availability of expert witnesses may not be as significant

as the availability of fact witnesses"); *cf. also Vargas v. Seamar Divers Intern., LLC*, No.

2:10–CV–178, 2011 WL 1980001, at *5 (E.D. Tex. May 20, 2011) ("[C]urrent employees . . .

should be considered party witnesses because they can be presumed to appear willingly on behalf

of their party employer.").  As discussed above, the Court need not decide whether Venezuela is

an available forum, nor will the Court engage in a detailed analysis regarding the legitimacy of

---

[13]  At the same time, given the nature of Plaintiff's claims, which appear to hinge in part on consideration of whether certain signatures are forgeries, experts will likely play an important, if not central, role in this case.

Plaintiff's witnesses' fears of arrest.[14]  Based on the information before it, however, the Court is

comfortable in presuming that Ohio is a more convenient forum for at least some of Plaintiff's

witnesses.  Although this consideration is not overly significant given the presence of several

Venezuelan non-party witnesses, it is also not irrelevant to the Court's analysis.

        c.      **Other Considerations**

In addition to the location of documents and availability of witnesses, the parties submit

that a few other practical considerations should influence the Court's analysis.  Defendants

emphasize that an Ohio forum will create problems surrounding the translation of documents.

Plaintiff stresses that this Court is already familiar with this case, thus making it more efficient to

proceed here.

When a case involves foreign language documents, the Court must consider the impact of

such documents, as well as the cost of translation, in weighing the convenience of the forum.

*Duha*, 448 F.3d at 876.  For the reasons discussed above, it appears that the majority of

documents in this case will be in Spanish.  Furthermore, a large number of witnesses will speak

Spanish.  Accordingly, there would be some advantage to proceeding in a forum where Spanish

is the primary language.  At the same time, however, there are likely to be translation costs no

matter where this case proceeds.  After all, Plaintiff is an Ohio corporation and its managing

member and founder, Richards, is an Ohio resident.  Consequently, given the nationalities of the

parties, the Court assumes that at least some level of translation will occur no matter where this

---

[14] Any such analysis would no doubt become intertwined with the ultimate issue of
whether Plaintiff's notes are forgeries.

case proceeds.[15]  Moreover, the record reflects that many relevant documents have already been translated into English.[16]

Finally, there is some benefit to the case remaining in this Court from an efficiency standpoint.  Given the long-pending nature of this action, several significant issues have been judicially determined.  It would require at least some time for any new forum to move this dispute to the current stage of this case.

### 2.    Public Interests

#### a.    Interest in Controversy

As detailed above, the Court must also examine public interests in considering the *Gulf Oil* factors.[17]  Defendants first maintain that Venezuela has a far greater interest in this case than the United States or Ohio.  Plaintiff, on the other hand, contends Ohio is an appropriate forum because it is an Ohio corporation and is greatly affected by the outcome of this case.

---

[15]  The Court agrees with Defendants, however, that whether translation will be required to accommodate attorneys is not a significant factor, as the parties would no doubt retain local counsel if this case were to proceed in Venezuela.

[16]  In addition to cost of translation, Defendants also express concern over potential inaccuracies and conflicts that are inherent with translation.  It is certainly possible that issues may arise regarding the proper translation of materials.  Nevertheless, without more concrete concerns, the Court finds the mere possibility of translation conflicts to be a relatively insignificant factor at least considered as a separate factor apart from the general burden of translation discussed above.

[17]  Some of the interests highlighted in *Gulf Oil* are either not applicable or are of minor importance under the circumstances of this case.  For example, the parties do not provide any evidence to suggest that the congestion of the potential forums' dockets is a significant factor in this case.  Moreover, this case will place no burden on jurors because the FSIA does not permit jury trials.  *de Csepel v. Republic of Hungary*, 808 F. Supp. 2d 113, 139 (D.D.C. 2011) ("[T]he Court notes that there is no burden on potential jurors, as jury trials are not available in suits brought under the FSIA.").

17

In *Gulf Oil*, the Supreme Court provided that it is benefitial to hold trial in a forum close

to the people involved.  330 U.S. at 509.  Relatedly, the Supreme Court recognized that "[t]here

is a local interest in having localized controversies decided at home."  *Id.*; *see also Rustal*, 17 F.

App'x. at 338 (indicating that public interest factors favored dismissal where the district in

question had a tenuous relationship to the action and the plaintiff was prosecuting foreign

interests).  At the same time, courts have recognized that a state has an interest protecting its

citizens from injuries occurring in that state.  *See, e.g.*, *Ito v. Tokio Marine & Fire Ins. Co., Ltd.*,

166 F. App'x 932, 935 (9th Cir. 2006) (recognizing California's interest in protecting its citizens

from breaches of contract and torts with injuring occurring in California).

Here, there is no question that Venezuela has a significant interest in this dispute.

Venezuela is a named defendant, as this case involves promissory notes that a Venezuelan state

bank allegedly issued.  Moreover, this action involves actions of the Venezuelan Attorney

General as well as the effect of such actions.  The case also touches on general concerns of

comity given that the Venezuelan Supreme Court has already issued an interpretative opinion

touching on issues involved in this dispute.[18]  Nevertheless, the United States, and more

specifically Ohio, also has an interest in this litigation.  Plaintiff is an Ohio company and

demanded that Defendants send payment for the Bandagro promissory notes to Columbus, Ohio.

As detailed above, Plaintiff has a significant stake in this dispute and is not merely representing

---

[18]  Defendants briefly imply that it would be improper for this Court to examine the
actions of Venezuelan government officials, and in particular the Attorney General's ultimate
revocation of the 2003 opinion, under the act of state doctrine.  (*See* Defs.' Supp'l Br. Supp.
Dismissal 23 n.22.)  Defendants, however, do not develop this argument and the Court declines
to address it, particularly in light of the fact that FISA has been held to permit this action to go
forward.

18

foreign interests.  Consequently, the injury to Plaintiff from Defendants' alleged conduct occurred in Ohio.  Notably, in considering the commercial activity exception of FSIA, the Sixth Circuit has already suggested that by failing to deliver payment to Columbus, Ohio, Defendants actions caused a direct effect in the United States.[19]  *DFRP*, 622 F.3d at 518.  Ultimately, under theses circumstances, the Court finds that this factor only slightly favors a Venezuelan forum.

> **b.    Applicable Law**

The parties also debate what law will apply in this case.  Defendants stress that given Plaintiff's reliance on the effect of the 2003 Attorney General opinion, this case will turn on the interpretation of Venezuelan law.  Additionally, Defendants suggest that the Court should not entangle itself in complex conflict of law determinations.  Although Plaintiff does not explicitly deny that issues of Venezuela law will arise, they stress that the notes provide that Swiss law will govern their terms and conditions.  Furthermore, Plaintiff emphasizes that because it demanded payment in Ohio, and consequently suffered injury in Ohio, Ohio law will likely govern some of its claims.

Based on the information and briefing currently before the Court, this factor favors Venezuela to a certain degree.  The parties offer limited briefing regarding conflict of law considerations and the Court will not reach any ultimate determination at this time concerning whether Ohio law, Venezuela law, or Swiss law will apply to Plaintiff's claims.  Moreover, the potential application of Swiss law appears to be a neutral factor.  It is clear at this time, however, that Venezuelan law will play at least some role, if not a significant one, in this action.

---

[19]  The Sixth Circuit explicitly held that Plaintiff had satisfied its burden of establishing an FSIA exception and Plaintiff had failed to carry its burden of persuasion in demonstrating that the exception did not apply.  *DRFP*, 622 F.3d at 518.

Specifically, a number of Plaintiff's claims will require the Court to consider whether it was reasonable, in light of Venezuelan law, for Plaintiff to rely on the 2003 Attorney General's opinion in purchasing the notes at issue. The Court does not doubt that a Venezuelan forum would be better able to address this issue.[20] At the same time, however, this Court is certainly capable of applying foreign law. *Cf. Am. Pan Co. v. Lockwood Mfg., Inc.*, No. C-3-06-197, 2006 WL 2792175, at 7 (S.D. Ohio Sept. 26, 2006) (noting, within the context of a *forum non conveniens* analysis, that although choice-of-law favored dismissal, "it is not uncommon for U.S. Courts to hear cases in which foreign law is applied").

   **3.      Balancing the Factors**

   Considering the various private and public interest factors in their totality, this case does not clearly balance in favor of either side. If the Court's role were to merely balance the competing interests involved, it appears that Venezuela might represent a somewhat better forum choice. After all, several of the balancing factors, including the location of witnesses, favor Venezuela. Nevertheless, the Court cannot simply balance the factors. For the reasons detailed above, the Court must begin with a strong presumption in favor of Plaintiff's choice of forum. As the Sixth Circuit has emphasized "[i]n general, the standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience . . . .'" *Duha*, 448 F.3d at 873–74

   Ultimately, the Court finds that Defendants have failed to carry their burden of

---

[20] Relatedly, Plaintiff stresses that Venezuela, unlike the United States, follows a civil law system.

overcoming the strong presumption in favor of Plaintiff's forum choice. This case is a complex dispute involving parties of different nationalities. There will undoubtedly be complications and inconveniences for the parties regardless of the forum in which it ultimately proceeds. Given the factors discussed above, it is clear that Venezuela would be a more convenient forum for Defendants. At the same time, however, this forum would be more convenient for Plaintiff, a Columbus, Ohio based company. Although the current record indicates that some private and public factors weigh in favor of Venezuela to some degree, the Court is not convinced that proceeding in this forum will be oppressive, vexatious, or otherwise unduly burdensome to Defendants. Accordingly, the Court finds that it should defer to Plaintiff's choice of forum.

### IV. Conclusion

For the foregoing reasons, Defendants request for dismissal on the grounds of *forum non conveniens* is **DENIED**.

**IT IS SO ORDERED.**

<u>  10- 23-2012  </u>
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

21