UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DRFP, LLC,

        Plaintiff,

    v.

THE REPUBLICA BOLIVARIANA
DE VENEZUELA, *et al.*,

        Defendants.

Case No. 2:04-CV-00793
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

Plaintiff DRFP, LLC dba Syke Ventures ("Plaintiff"), brings this action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, asserting counts against Defendants the Bolivarian Republic of Venezuela and the Venezuelan Ministry of Finance's ("Defendants") for default on promissory notes; estoppel/detrimental reliance; breach of contract; promissory estoppel; and negligence. This matter comes before the Court for consideration of Defendants' Motion to Transfer Under 28 U.S.C. §§ 1404(a), 1406(a) (ECF No. 274); Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b) (ECF No. 275); and Defendants' Motion for Certification of this Court's October 23, 2012 *Forum Non Conveniens* Decision Pursuant to 28 U.S.C. § 1292(B) (ECF No. 276). For the reasons that follow, Defendants' Motion to Transfer is **DENIED**; Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part subject to the conditions within this Opinion and Order; and Defendants' Motion for Certification is **DENIED**. Plaintiff is **DIRECTED** to file a Second Amended Complaint within **SEVEN (7) DAYS** of this Opinion and Order withdrawing its claims for promissory estoppel and negligence. The Court will schedule a status conference with

the parties, through separate order, to discuss resolution of the statute of limitations issue.

## I. BACKGROUND

**A.     Factual History**

This action centers around two promissory notes, the legitimacy of which are in dispute.

Plaintiff maintains that in December 1981 Banco Desarrollo Agropecuario SA ("Bandagro"), a

Venezuelan financial institution established pursuant to the laws of the Republic, issued a series

of bearer promissory notes (hereinafter "the Bandagro notes"), including the two notes at issue in

this case (hereinafter "the Notes"). (Am. Compl. ¶¶ 6–7, ECF No. 147.)  According to Plaintiff,

Bandagro issued the Bandagro notes for the purpose funding economic development programs in

Venezuela and traded the Bandagro notes on the international financial market. (*Id.* at ¶¶ 9–10.)

The Notes at issue here, which Plaintiff attached to the Amended Complaint, state that

they are guaranteed by the Venezuelan government. (Am. Compl. Exs. 1A, 1B, ECF No. 147-1.)

The Notes have a face value of $50,000,000.00 (US) each. (*Id.*)  The Notes include a provision

stating that the laws of Switzerland will govern their terms and conditions. (*Id.*)  The Notes

further provide that they are governed by the regulations of the International Chamber of

Commerce as well as the United States Council of the International Chamber of Commerce

Brochure 322. (*Id.*)

The language of the Notes reflects that they were set to mature in December 1991. (*Id.*)

Plaintiff asserts, however, that in December 1991, the Minister of Hacienda (precursor to the

current Minister of Finance), "unilaterally extended the Notes' maturity until December,

2

1999 . . . ."[1]  (Am. Compl. ¶ 11.)  Plaintiff further contends that "[p]rior to the maturity of the Notes, Bandagro ceased operations and is currently defunct."  (*Id.* at ¶ 15.)

Plaintiff asserts that during, and before, April 2002 certain holders of the Bandagro notes requested payment.  (*Id.* at ¶ 18.)  Such requests prompted the Venezuelan Minister of Finance to investigate the legitimacy of the Bandagro notes.  (*Id.* at ¶¶ 18–21.)  According to Plaintiff, the investigation included an inspection of the Notes at issue in this case, which occurred in the United States.  (*Id.* at ¶ 21.)  Plaintiff maintains that following a four-month investigation, the Ministry of Finance's Office of Legal Counsel issued a report concluding that the holders of the Notes had legitimate rights to payment.  (*Id.* at ¶ 22.)  Plaintiff asserts that based on these findings, Venezuelan Attorney General Marisol Plaza issued an opinion on October 3, 2003, stating that the Notes were valid and that Venezuela was obligated to make payments on them. (Am. Compl. at ¶ 25.)  Plaintiff contends that on approximately October 17, 2003, the Minister of Finance distributed copies of the Attorney General's opinion to the holder of the Notes.  (*Id.* at ¶ 26.)

Plaintiff is a Columbus, Ohio based limited liability company.  (*Id.* at ¶ 3.)  It states that it is the holder and bearer of the two Notes in question.  (*Id.* at ¶ 14.)  Plaintiff asserts that it acquired the Notes from Gruppo Triad-FCC SPA ("Gruppo"), a Panamanian corporation.  (*Id.*) Plaintiff maintains that, prior to purchasing the Notes, it received a copy of the October 3, 2003 opinion of the Attorney General.  (*Id.* at ¶ 26.)  Within the Amended Complaint, Plaintiff

---

[1]  In briefing, Plaintiff also alludes to a May 1996 letter—that an official within the Ministry of Finance purportedly authored—indicating that the Ministry of Finance was considering extending the maturity date of the Notes for eight years until December 1999.  (*See* Defs.' Reply Ex. 1, ECF No. 289-1.)

contends that, in purchasing the Notes, it relied on the Attorney General's October 3, 2003 opinion.  (Am. Compl. ¶ 29.)  Plaintiff further contends that on August 11, 2004, it demanded—from Columbus, Ohio—that Defendants make payment on the Notes by depositing funds in a Columbus, Ohio financial institution.  (*Id.* at ¶ 32.)  Defendants have refused to make payment on the Notes.  (*See id.* at ¶ 33.)

Defendants maintain that the Notes in question are part of a series of well-known forgeries.  They specifically question the conduct of James Paolo Pavanelli ("Pavanelli"), the CEO and President of Gruppo.  Defendants submit that even before Plaintiff acquired the Notes, Pavenelli had already been convicted twice—in England and Italy— for trading in false Bandagro notes.  Moreover, Defendants stress that, since 1981, Venezuelan government officials have conducted numerous investigations into the validity of Bandagro notes.  According to Defendants, these investigations have revealed that the Bandagro notes are forgeries.  Additionally, Defendants provide that Venezuela has issued several alerts warning the public that such notes are invalid.  Defendants submit that the individuals who purportedly signed the Notes have testified that they never signed such documents.  Finally, Defendants posit that multiple investigations independent from Venezuela have also determined that the Bandagro notes are forgeries.

Defendants further challenge Plaintiff's reliance on the October 2003 opinion of the Attorney General.  Defendants characterize the Attorney General's opinion as a "non-public, inter-agency letter . . . ."  (Defs.' Mot. Dismiss 7, ECF No. 275.)  Defendants emphasize that the Attorney General withdrew this opinion shortly after finding that government officials had overlooked evidence.  Defendants also contend that in December 2003, following further

4

investigation by both the Attorney General and Ministry of Finance, the Attorney General issued a new opinion finding the Notes invalid. (*See* Flores Decl. Ex. Q, ECF No. 120–24.)  Moreover, Defendants stress that in July 2007, the Venezuelan Supreme Court issued an interpretative opinion finding that the Attorney General's October 2003 opinion was consultive in nature, as opposed to binding, and did not create private individual rights. (*See* Evseev Decl. Ex. B. at 23, ECF No. 118-3.)

**B.     Procedural History**

Plaintiff originally filed this cause of action on August 23, 2004, bringing a single cause of action for default on the two Notes. (*See* Compl., ECF No. 1.)  On January 31, 2005, Defendants moved for dismissal based on a lack of subject matter jurisdiction in light of sovereign immunity under FSIA; lack of personal jurisdiction; preclusion under the act of state doctrine; *forum non conveniens*; and failure to state a claim. (*See* ECF Nos. 13, 14.)  On June 7, 2007, Defendants filed a supplement to their original Motion to Dismiss urging that the Court to first consider the issues of sovereign immunity and *forum non conveniens*. (ECF No. 106.)

On February 13, 2009, the Court, through United States District Judge John D. Holschuh, now deceased, issued an Opinion and Order denying Defendants' Motion to Dismiss on the grounds of subject matter jurisdiction and *forum non conveniens*.[2]  The Court held that it possessed subject matter jurisdiction pursuant to FSIA's commercial activity exception. Additionally, the Court concluded that Venezuela was not an available forum because the

---

[2]  Although the undersigned was not assigned to this case until February 2011, the docket reflects that the parties engaged in extensive motion practice (concerning discovery, stays of proceedings, and the effect of the 2007 Venezuela Supreme Court decision) that delayed any consideration of Defendants' original Motion to Dismiss.

Venezuelan Supreme Court's 2007 decision "would not permit litigation of one of the essential issues of Plaintiff's complaint." (Opinion & Order 20, ECF No. 144.)

Plaintiff filed an Amended Complaint on March 2, 2009. Within the Amended Complaint, Plaintiff reasserted a cause of action for default on the Notes. Plaintiff also pled four additional counts for estoppel/detrimental reliance; breach of contract; promissory estoppel; and negligence.

Defendants appealed the Court's February 13, 2009 Opinion and Order.[3] The United States Court of Appeals for the Sixth Circuit issued its Opinion on September 23, 2010. *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513 (2010). The Sixth Circuit affirmed this Court's holding as to subject matter jurisdiction, concluding that the Notes gave Plaintiff a right to designate the United States as a place of payment, thus creating a direct effect in the United States within the meaning of FSIA. *Id.* at 518. The Sixth Circuit, however, reversed the Court's decision as to *forum non conveniens*. *Id.* at 520. The Sixth Circuit held that the Venezuela Supreme Court decision did not render Venezuela "unavailable and inadequate as a matter of law" and remanded for a "full consideration of the question whether the doctrine of *forum non conveniens* applies." *Id.*

Following remand, the parties submitted supplemental briefing regarding the issue of *forum non conveniens*. On October 23, 2012, the Court again denied Defendants' request for dismissal on the grounds of *forum non conveniens*. The Court, after considering the factors

---

[3] Defendants appealed the Court's denial of foreign sovereign immunity as a matter of right pursuant to 28 U.S.C. § 1291. Upon Defendants' Motion, the Court also certified the issue of *forum non conveniens* for interlocutory appeal. (Opinion & Order, ECF No. 155.) Finally, the Court stayed proceedings during the pendency of the interlocutory appeal. (Opinion & Order, ECF No. 198.)

outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), found that Defendants failed to carry their burden of overcoming the strong presumption in favor of Plaintiff's forum choice. (Opinion & Order 20–21, ECF No. 263.)

This matter is now before the Court for consideration of three pending Motions that Defendants filed shortly after the Court's October 23, 2012 Opinion and Order. First, Defendants move for transfer of this case to the United States District Court for the District of Columbia ("D.C. District Court") pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Second, Defendant move for dismissal on a variety of grounds pursuant to Federal Rule of Civil Procedure 12. Finally, Defendants request certification to file an interlocutory appeal from this Court's October 23, 2012 Opinion and Order addressing *forum non conveniens*.

## II. ANALYSIS

### A. Motion to Transfer

The Court will first address Defendants' Motion to Transfer. Defendants request transfer pursuant to 28 U.S.C. § 1406(a), maintaining that venue in this Court is improper. Defendants specifically contend that the FSIA makes the D.C. District Court the default venue for actions against foreign states and that none of the FSIA's exceptions applies. *See* 28 U.S.C. § 1391(f) (outlining where a plaintiff may bring a civil action against a foreign state). In the alternative, Defendants maintain that this Court should transfer this case for the convenience of the parties and witnesses, and in the interest of justice, pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes transfer, maintaining that Defendants (1) have waived the right to challenge improper venue and (2) that transfer is not appropriate under either 28 U.S.C. §§ 1406(a) or 1404(a).

### 1.    28 U.S.C. § 1406(a)

Section 1406(a) provides that "[t]he district court of a district in which is filed a case

laying  venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

transfer such case to any district or division in which it could have been brought." 28 U.S.C.

§ 1406(a).  Similarly, Federal Rule of Civil Procedure 12(b)(3) allows a defendant to raise the

defense of improper venue.

Importantly, "[u]nlike jurisdictional defects, venue objections can be waived."

*Al-Muhaymin v. Jones*, 895 F.2d 1147, 1149 (6th Cir. 1990); *see also Wausau Benefits v.*

*Progressive Ins. Co.*, 270 F. Supp. 2d 980, 985 (S.D. Ohio 2003) ("The defense of improper

venue . . . can be waived if not timely asserted."); 14D C. Wright & A. Miller, Federal Practice

and Procedure § 3801 (3 ed.) ("Because venue is for the convenience of litigants it is a personal

privilege of the defendants and can be waived by them.").  Within the context of Federal Rule of

Civil Procedure 12, the defense of improper venue is waived if it is not presented in a party's

initial 12(b) motion.[4]  Fed. R. Civ P. 12(g)(2)–(h)(1)(A).  Here, Defendants challenge venue

pursuant to 28 U.S.C. § 1406(a) rather than Federal Rule of Civil Procedure 12(b)(3).  Although

many federal courts hold that waiver under Rule 12 applies equally to § 1406(a), there appears to

be some disagreement on the issue.  *Compare, e.g., Gardner v. Mylan Inc.*, No. 2:09–cv–01289,

2010 WL 2595114, at *2 (S.D.W.Va. June 24, 2010) (indicating that Rule 12 waiver guidelines

apply to § 1406(a)); *Bosse v. Chertoff*, No. 05-CV-02170, 2007 WL 484590, at *2 (D. Colo. Feb.

9, 2007) ("[T]here is significant authority for the proposition that, once a defense of improper

---

[4] If a party foregoes a 12(b) motion, it may raise the defense of improper venue in its
responsive pleading.  Fed. R. Civ. P. 12(h)(1)(B).

8

venue is waived, a defendant is also foreclosed from seeking a transfer under § 1406."); *with,*

*e.g., Johnson v. United Airlines, Inc.*, No. 12 C 5842, 2013 WL 323404, at *2 (N.D. Ill. Jan. 25,

2013) (recognizing conflicting case law regarding whether "waiver . . . under Rule 12(b)(3)

extends to [a] request for a transfer under § 1406(a), given that such a transfer is premised on

venue being improper in this District.").

      Regardless, it is clear that a party can waive the right to transfer pursuant to 28 U.S.C.

§ 1406(a) if it does not raise the issue in a timely fashion. *Al-Muhaymin*, 895 F.2d at 1149.

Section 1406(b) specifically provides "[n]othing in this chapter shall impair the jurisdiction of a

district court of any matter involving a party who does not interpose timely and sufficient

objection to the venue." 28 U.S.C. § 1406(b).

      In this case, the Court finds that Defendants have waived any objection to improper venue

under 28 U.S.C. § 1406(a). Plaintiff's filed this case in August 2004. Although Plaintiff

amended its Complaint in 2009, the current venue issue that Defendants raise was available, and

apparent, at the time of the original Complaint. (*See* Compl. ¶ 2.) In 2005, Defendants filed a

Motion to Dismiss raising several Rule 12(b) defenses including subject matter jurisdiction,

personal jurisdiction, and failure to state a claim. Plaintiff's did not raise any challenge to venue

at this time. *Cf. RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 395 n.7 (S.D.N.Y. 2009)

(holding that the Deputy Prime Minister of Grenada waived his right to challenge venue under

the FSIA by not raising the matter in his first motion to dismiss). Even assuming the waiver

standards of Rule 12 do not apply, Defendants' delay constitutes waiver under 28 U.S.C.

§ 1406(b). From the filing of the Complaint in 2004 to their interlocutory appeal in 2009,

Defendants did not file a motion for transfer pursuant to 1406(a). Ultimately, Defendants waited

until November 2012, over eight years after this action was filed, to raise the issue of improper venue under 28 U.S.C. § 1406(a).[5] Under these circumstances, Defendants have waived their right to contend that venue is improper under the FSIA.[6]

### 2.    28 U.S.C. § 1404(a)

Defendants maintain, in the alternative, that this case should be transferred to the D.C. District Court pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Because a § 1404(a) transfer is based more generally on convenience and the interest of justice, rather than improper venue, it does not have the same timing and waive implications as a transfer under § 1406(a).  *Cf. James v. Norfolk & W. Ry. Co.*, 430 F. Supp. 1317, 1319 n.1 (S.D. Ohio 1976) ("A motion to transfer venue under [section] 1404(a) is not a Rule 12(b)(3) motion and is not governed by the waiver provisions of Rule 12(h).").

"Courts interpreting Section 1404(a) must engage in a two-step analysis and determine: (1) whether the action might have been brought in the proposed transferee court; and (2) whether considering all relevant factors, the balance of convenience and the interest of justice 'strongly'

---

[5] The Court recognizes that this case was stayed during a portion of this eight-year period due to Defendants interlocutory appeal.  Nevertheless, the Court still finds it obvious that—given the progression of this case—Defendants failed to raise a "timely and sufficient objection" to venue within the meaning of § 1406(b).

[6] Defendants also stress that a court may transfer an action *sua sponte* under § 1406(a). Although there are circumstances when a court may consider transfer *sua sponte*, because Defendants have waived any objection to improper venue, the Court finds that any such consideration would be inappropriate in this case.

10

favor transfer." *Proctor & Gamble Co. v. Team Tech., Inc.*, No. 1:12–cv–552, 2012 WL 5903126, at *3 (S.D. Ohio Nov. 26, 2012). When examining the second step, "courts are to consider both the private interests of the parties and the public's interest in the administration of justice." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). Private interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditions and inexpensive.

*Id.* (quoting *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)).

Relevant public interests include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Id.* (internal citation omitted). Finally, in evaluating transfer under § 1404(a), this Court has considered "additional factors includ[ing] the nature of the suit; the place of the events involved; . . . and the residence of the parties." *Id.*

Generally, "[t]he plaintiff's choice of forum is given considerable weight and the balance of convenience, considering all the relevant factors should be strongly in favor of a transfer before such will be granted." *Id.* (internal quotations omitted). This Court has recognized, however, that "[w]hen the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise." *Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C–1–96–1149, 1997 WL 311474, at *3 (S.D. Ohio Mar 30, 1997); *see also Perrywatson v. United Airlines, Inc.*, No. 1:09 CV 1957, 2010 WL

11

359696, at *2 (N.D. Ohio Jan. 29, 2010) ("While a plaintiffs choice of forum is generally entitled to substantial weight, that choice is given less consideration if the operative events giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff.").

Finally, the party moving for transfer pursuant to § 1404(a) bears "the burden of establishing the need for a transfer of venue." *Dayton Superior Corp.*, 288 F.R.D at 165. "[T]he decision on whether to grant a change of venue rests with the sound discretion of the trial court." *Id.* at 166.

In this case, the Court finds that Defendants have failed to establish that the balance of convenience, and interest of justice, favor transfer.[7] Defendants offer limited detail as to why the D.C. District Court will be a more convenient location for them and/or the witnesses. Instead, Defendants rely on two general assertions in contending that transfer is proper. First, citing legislative history from the FSIA, Defendants maintain that the D.C. District Court is a more central forum for foreign states and their diplomatic representatives. *Cf.* 28 U.S.C. § 1391(f)(4) (providing that a civil action against a foreign state may be brought in the D.C. District Court). Second, Defendants contend that there is no meaningful relationship between this forum and Plaintiff's claim.

Under the circumstances of this case, the factors Defendants highlight do not justify transfer. Although Defendants fail to specifically outline how the D.C. District Court is a more convenient forum to them and their witnesses, the Court will presume that the D.C. District

---

[7] Both parties appear to presume that this action might have been brought in the D.C. District Court under the first prong the § 1404(a) analysis. Even assuming that this prong is met, Defendants fail to meet their burden of establishing the need for transfer. Accordingly, it is unnecessary for the Court to reach an ultimate determination regarding this issue.

12

Court generally offers a more convenient forum to a foreign state and that there is a public interest in having foreign disputes settled in a central forum. Nevertheless, the Court finds that—considering efficiency and other practical concerns—such factors are balanced, if not outweighed, by the fact that this Court has already gained extensive experience and familiarity with this action. Additionally, the District of Columbia has little, if any, relation to the operative facts of this action. Moreover, Defendants undervalue the relationship of Plaintiff, and its claims, to this forum. As detailed in the Court's October 23, 2012, the record contains evidence that Plaintiff is an Ohio limited liability company with its offices in Columbus, Ohio; at least a portion of Plaintiff's purchase of the Notes in question took place in Columbus, Ohio; and Plaintiff requested that Defendant send payment on the Notes to Columbus, Ohio. (*See* Opinion & Order 8–9, ECF No. 263.) Even assuming that such circumstances do not justify considerable weight to Plaintiff's forum selection under § 1404(a), its choice of forum is due at least some consideration. Ultimately, in light of these circumstances and the record currently before the Court, Defendants have failed to sufficiently demonstrate that public and private interests weigh in favor of transfer to the D.C. District Court.

**B.    Motion to Dismiss**

In addition to seeking a transfer, Defendants also move to dismiss Plaintiff's claims on a variety of grounds under Federal Rule of Civil Procedure 12. Defendants contentions include that they are immune under the FSIA with respect to Plaintiff's claims for equitable/detrimental reliance (count two), promissory estoppel (count four), and negligence (count five) of the Amended Complaint; that the Court lacks personal jurisdiction over Defendants; that certain claims are barred under the applicable statutes of limitations; that all of the claims are barred

under the act of state doctrine; and that Plaintiff's claims all fail to state a claim under Rule 12(b)(6).

In responding to Defendants Motion to Dismiss, Plaintiff seeks to withdraw its claims for promissory estoppel and negligence. Additionally, Plaintiff concedes that the second count of the Amended Complaint—labeled as equitable/detrimental reliance—is not an independent cause of action, but instead an affirmative pleading of equitable estoppel to preclude Defendants from asserting a defense. Plaintiff opposes the remainder of Defendants' assertions.

The Court will begin by addressing whether Plaintiff may withdraw its claims for promissory estoppel and negligence. Second, the Court will consider whether it has personal jurisdiction over Defendants. The Court will then evaluate the parties' contentions concerning Plaintiff's equitable estoppel theory. Finally, the Court will separately evaluate Defendants' contentions relating to Plaintiff's breach of contract and default claims.

## 1.      Promissory Estoppel and Negligence Claims

Defendants maintain that they are entitled to immunity under the FSIA, and therefore the Court lacks jurisdiction, with regard to Plaintiff's claims of promissory estoppel and negligence. Although Plaintiff disagrees with this position, to prevent any further delay to this action—given the potential for a second interlocutory appeal—Plaintiff seeks to withdraw these claims. Through separate Notice to the Court, Plaintiff indicates that it is requesting to withdraw the claims with prejudice. (ECF No. 297.)

Procedurally, as this Court has previously held, "voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) is only available to dismiss entire actions, not single claims." *Barrientos v. UT-Battelle, LLC*, 284 F. Supp. 2d 908, 916 (S.D. Ohio 2003). Nevertheless,

14

Federal Rule of Civil Procedure 15(a) "permits a party to amend its pleading by leave of court, which shall be freely given when justice so requires."[8] *Id.* (internal quotations omitted). In considering whether to allow leave to amend, the Court must consider potential prejudice to the opposing party. *Greene v. Ab Coaster Holdings, Inc.*, Nos. 2:10–cv–38, 2:10–cv–234, 2012 WL 2342927, at *5 (S.D. Ohio June 20, 2012); *but cf. Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp.2d 848, 51–52 (W.D. Mich. 2007) ("It generally is considered an abuse of discretion for a court to deny a plaintiff's request for voluntary dismissal with prejudice.") (citing *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964)).

In this case, the Court will allow Plaintiff leave to amend to withdraw its claims based on the representation that such withdrawal is with prejudice. Given Plaintiff's Notice to the Court indicating that it will not pursue these claims in the future, the Court finds that leave to amend will not prejudice Defendants. Moreover, because Plaintiff seeks leave to withdraw with prejudice, the Court finds it unnecessary to determine whether FSIA immunity applies. In light of these circumstances, the Court **DISMISSES** Plaintiff's promissory estoppel and negligence claims with prejudice upon Plaintiff's amendment to the pleadings. Plaintiff is **DIRECTED** to file its Second Amended Complaint, withdrawing the claims, within **SEVEN (7) DAYS** of the date of this Opinion and Order.

## 2. Personal Jurisdiction

Before considering Defendants individual contentions relating to Plaintiff's remaining claims and pleadings, the Court will address the issue of personal jurisdiction. Defendants

---

[8] In seeking to withdraw its promissory estoppel and negligence claims, Plaintiff states that it is willing to amend its pleadings to eliminate the claims if necessary. (Pl.'s Mem. Opp'n Mot. Dismiss 16, ECF No. 282.)

maintain that this Court lacks personal jurisdiction over them because Plaintiff's cannot satisfy the constitutional due process requirements of personal jurisdiction.  Specifically, Defendants contend that (1) Plaintiff cannot demonstrate that Defendants have sufficient contacts to meet due process, on either a state or national level, and (2) this Court's exercise of jurisdiction over Defendants would not comport with traditional notions of fair play and substantial justice. Plaintiff, on the other hand, asserts that the constitutional prerequisites for personal jurisdiction do not apply in this case because a foreign state is not a person within the meaning of the due process clause.[9]

For the purposes of statutory jurisdiction, the FSIA "makes personal jurisdiction over a foreign state automatic when an exception to immunity applies and service of process has been accomplished in accordance with 28 U.S.C. § 1608." *Samantar v. Yousuf*, 130 S.Ct. 2278, 2292 n.20 (2010) (citing 28 U.S.C. § 1330(b)); *see also Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 454 (6th Cir. 1988) (holding that under the FSIA "personal jurisdiction [] depend[s] upon the district court finding subject matter jurisdiction under 28 U.S.C. § 1330(a), and proper service under 28 U.S.C. § 1608"). For the purposes of personal jurisdiction, Defendants do not currently challenge personal jurisdiction under the FSIA.[10]

---

[9] Plaintiff also contends, in the alternative, that due process requirements are satisfied under the circumstances of this case.  Because the Court agrees that Defendants are not "persons" for the purposes of the due process clause, it is unnecessary to address due process requirements.

[10] Defendants have stipulated to service of process in this case.  (ECF No. 7.)  Moreover, both the Sixth Circuit and this Court have concluded that subject matter jurisdiction exists under 28 U.S.C. § 1330(a) as to Plaintiff's claim for default on the promissory notes.  Defendants maintain that the Court lacks subject matter jurisdiction, in light of FSIA immunity, as to Plaintiff's remaining claim for breach of contract and the affirmative pleading of equitable estoppel.  The Court will consider these arguments when addressing these specific claims below.

The parties, however, dispute whether constitutional due process requirements—typically applicable to personal jurisdiction—apply in this case. The Fifth Amendment provides that "[n]o *person* . . . [shall] be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend V (emphasis added). Within the context of personal jurisdiction, due process generally requires "that a defendant have minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there" and that "[t]he exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (internal quotations omitted). "The personal jurisdiction requirement stems from the Due Process Clause of the Fifth Amendment and serves to restrict judicial power in order to protect an individual's liberty interest." *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 575 (6th Cir. 2001).

The question in this case is whether a foreign state is a "person" within the meaning of the Fifth Amendment, and, therefore, entitled to due process protection.[11] In 1992, the United States Supreme Court held that a district court had subject matter jurisdiction over the Republic of Argentina under the FSIA. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 609, 620 (1992) (internal quotations omitted). Although the decision focused on subject matter jurisdiction, Argentina also contended that a finding of jurisdiction over them would violate due process. *Id.* at 619. The Supreme Court assumed, without deciding, that a foreign state was a person for the purpose of the Due Process Clause, and held that Argentina had sufficient minimum contacts. *Id.* At the same time, however, the Supreme Court cited *South Carolina v.*

---

[11] Neither party suggests that analysis of this issue differs as to the Venezuelan Ministry of Finance.

17

*Katzenbach*, 383 U.S. 301, 323–324 (1966) for the proposition that "States of the Union are not 'persons' for purposes of the Due Process Clause." *Id.*

Following *Weltover*, the vast majority of federal courts to address this issue have determined that foreign states are not persons within the meaning of the Due Process Clause. *See, e.g.*, *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 694 (7th Cir. 2012) (holding that "foreign states are not 'persons' entitled to rights under the Due Process Clause"); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 398–99 (2nd Cir. 2009) (same); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) (same); *Continental Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 752 n.12 (E.D. Va. 2012) ("Every circuit court to address the issue has held that foreign states are not 'persons' protected by the Fifth Amendment, and thus foreign states are not subject to the minimum contacts analysis prior to the exercise of personal jurisdiction.") (internal quotations omitted); *Smith v. Ghana Commercial Bank*, No. 08–5324, 2009 WL 3327206, at *5 n.4 (D. Minn. Oct. 13, 2009) ("[T]he question whether a court may exercise personal jurisdiction over a foreign state and its agents and instrumentalities does not involve a due process analysis of minimum contacts with the forum."); *but see Strata Heights Intern. Corp. v. Petroleo Brasileiro, S.A.*, 67 F. App'x 247, 2003 WL 21145663, at *4 (5th Cir. Apr. 28, 2003) (applying traditional due process analysis for personal jurisdiction to the national oil company of Brazil without addressing the issue of whether a foreign state is a person under the Fifth Amendment). The majority position stems from both the common usage of the term person and the notion that there is no compelling reason to afford foreign sovereigns greater due process protections than States of the Union. *Price*, 294 F.3d at 96–97. Relatedly, at least some courts have emphasized that in *Weltover* the

18

Supreme Court's "implication was plain: If the 'States of the Union' have no rights under the Due Process Clause, why should foreign states?" *Frontera*, 582 F.3d at 398–99.

The Court finds the underlying reasoning of the majority position persuasive and holds that foreign states are not "persons" entitled to protection under the Due Process Clause. Specifically, the Court agrees that "it would be highly incongruous to afford greater Fifth Amendment rights to foreign nations, who are entirely alien to our constitutional system, than are afforded to the states, who help make up the very fabric of that system." *Price*, 294 F.3d at 96. Additionally, contrary to Defendants' contentions, for the purposes of personal jurisdiction foreign states are more analogous to States of the Union than foreign corporations.[12] Accordingly, because the Court finds that the Due Process Clause does not apply to Defendants, there contentions regarding personal jurisdiction are unavailing.

Defendants maintain that Sixth Circuit authority requires this Court to conclude that due process requirements for personal jurisdiction apply to foreign states. Defendants specifically cite *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995); *Gould*; and *Riedel v. Bancam, S.A.*, 792 F.2d 587 (6th Cir. 1986) for this proposition. Sixth Circuit authority does not require a different conclusion. None of the cases Defendants cite actually reaches the issue of whether a foreign state is a person for the purposes of the Due Process Clause. In *Antoine*, the Sixth Circuit held that a district court had personal jurisdiction because there was no dispute as to the district court's finding that the defendant had sufficient contacts to support jurisdiction. 66 F.3d at 111. Because the issue was undisputed, it was unnecessary for the Sixth Circuit to decide the

---

[12] Moreover, as *Price* recognized "[u]nlike private entities, foreign nations are the juridical equals of the government that seeks to assert jurisdiction over them." 294 F.3d at 98.

underlying issue of whether constitutional requirements even applied.  *See id.*  Similarly, in

*Gould*—a case also involving a foreign state—the Sixth Circuit noted that the district court had

conducted a minimum contact analysis.  853 F.2d at 453–54.  The Sixth Circuit recognized that,

in passing the FSIA, "Congress sought to require jurisdictional contacts and notice which would

satisfy due process requirements."[13]  *Id.*  The Sixth Circuit, however, did not determine whether

the Due Process Clause actually applied to foreign state.  *See id.*  Finally, in *Riedel*, a case

involving Mexico, the Sixth Circuit addressed issues of subject matter jurisdiction and the act of

state doctrine.  In *dicta*, the *Riedel* Court stated in passing that upon remand the district court

would have to consider whether the defendant had "sufficient 'contacts' with the United States to

satisfy due process." 792 F.2d 594.  Nevertheless, the issue of personal jurisdiction was not

before the Sixth Circuit on appeal and the Court did not analyze whether foreign states are

entitled to due process protection.  *See id.*  Moreover, the Sixth Circuit reached its decisions in

both *Gould* and *Riedel* without the benefit of the Supreme Court's observations in *Weltover.*

### 3.    Equitable Estoppel

The Court next considers Plaintiff's pleading of equitable estoppel.  As detailed above,

within the Amended Complaint, Plaintiff brings a separate "Count" for "Estoppel/Detrimental

Reliance." (Am. Compl. ¶¶ 38–44.)  Plaintiff specifically contends that the Venezuelan Attorney

General's October 2003 opinion—determining that the Notes created legitimate payment

obligations—precludes Defendants from contending that the Notes are invalid.  (*See id.* at ¶ 43.)

---

[13]  To the extent Defendants contend that the FSIA, itself, requires a constitutional due
process analysis, this contention is at odds with the Supreme Court's notation in *Samantar*.  130
S.Ct. at 2292 n.20 (recognizing that the FSIA "makes personal jurisdiction over a foreign state
*automatic* when an exception to immunity applies and service of process has been accomplished
in accordance with 28 U.S.C. § 1608") (emphasis added).

Defendants move for dismissal of the equitable estoppel count based on both FSIA immunity and failure to state a claim. In response, Plaintiff clarifies that it is attempting to affirmatively plead equitable estoppel, which is not an independent cause of action under Ohio law. *See*, *Smith v. Safe Auto Ins. Co.*, 179 Ohio App. 3d 240, 247 (Ohio Ct. App. 2008) (explaining that "'equitable estoppel' is not an independent cause of action"). Nevertheless, Plaintiff maintains that its equitable estoppel count is a viable affirmative pleading relating to other claims.

### a.    Preliminary Matters

Before addressing the substantive merits of Plaintiff's equitable estoppel theory, it is necessary to address three preliminary issues. Specifically, the Court must consider (1) whether it has subject matter jurisdiction over Plaintiff's equitable estoppel pleading; (2) the necessity of a choice of law analysis; and (3) whether it may evaluate equitable estoppel at the pleading stage.

First, with regard to subject matter jurisdiction, Defendants maintain that FSIA immunity applies to Plaintiff's equitable estoppel pleading. The Court disagrees. Even assuming that the FSIA requires the Court to analyze foreign sovereign immunity on a claim-by-claim basis, equitable estoppel is not a claim. Rather, it is an affirmative pleading relating to Plaintiff's claims for default on the Notes and breach of contract.[14] The Sixth Circuit and this Court have both concluded that immunity under the FSIA does not apply to Plaintiff's claim for default on the Notes. Accordingly, the Court has jurisdiction to consider an affirmative pleading relating to this claim.[15]

---

[14] The Court will address below whether Defendants are entitled to FSIA immunity with respect to Plaintiff's breach of contract claim.

[15] In contending that the Court lacks jurisdiction, Defendants stress that the Sixth Circuit's decision regarding immunity was premised on the assumption that the Notes are valid.

21

Second, Defendants raise the possibility that Venezuela law, rather than Ohio law, applies to the equitable estoppel theory.[16] "[I]n FSIA cases, [the Court] use[s] the forum state's choice of law rules to resolve all issues, except jurisdictional ones." *O'Bryan v. Holy See*, 556 F.3d 361, 381 (6th Cir. 2009) (internal quotations omitted). Under Ohio law, "if two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply." *Wendy's Intern., Inc. v. Illinois Union Insur. Co.*, No. 2:05-cv-803, 2007 WL 710242, at *5 (S.D. Ohio Mar. 6, 2007); *see also Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 474–75 (Ohio 2006) (holding that "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken"). Moreover, the party seeking application of foreign law "bears the burden of showing that the foreign law is different from the local law: [w]here the party seeking application of the law of a foreign jurisdiction fails to demonstrate a conflict between local law and the law of that jurisdiction, local law . . . governs." *Wendy's Intern.*, 2007 WL 710242, at *5 (internal quotations omitted); *see also Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp.2d 721, 726 (S.D. Ohio 2008) ("When parties

---

*See DFRP*, 622 F.3d at 515 ("Despite Venezuela's insistence that the notes are forgeries, we must assume, for purposes of deciding the jurisdictional issues before us, that they are valid.") Defendants contend that Plaintiff's equitable estoppel theory is based on the assumption that the Notes are invalid. (Mot. Dismiss Reply 34, ECF No. 289.) Defendants' characterization of equitable estoppel is incorrect. In pleading equitable estoppel, Plaintiff is not offering an alternative theory based on the invalidity of the Notes. Instead, Plaintiff is attempting to preclude Defendants from raising invalidity based on their prior conduct.

[16] The Notes, on their face, contain a provision stating that Swiss law shall apply to their terms and conditions. Neither party, however, maintains that Switzerland law should apply with respect to equitable estoppel nor that Switzerland law would alter the outcome of the Court's analysis.

acquiesce to the application of a particular state's law, courts need not address choice of law questions.").

Here, the Court finds an ultimate choice of law determination—with regard to equitable estoppel—unnecessary. Although Defendants contend that Venezuelan law is more appropriate, they maintain that dismissal is required regardless of which law governs.[17] Plaintiff does not expressly address the choice of law issue, but appears to presume that Ohio law governs its equitable estoppel theory. As detailed further below, the Court agrees with Defendant that Plaintiff fails to plead equitable estoppel under Ohio law. Under these circumstances, the Court will presume that Ohio law applies.

Finally, Plaintiff maintains that Defendants' challenges to equitable estoppel are premature at the pleading stage. The Court disagrees. As this Court has recently held, applying Ohio law, "[a] court may resolve the issue of equitable estoppel's applicability on a Rule 12(b)(6) motion to dismiss if the plaintiff has not pleaded facts that, if proved, demonstrate" the basis for equitable estoppel. *Allen v. Andersen Windows, Inc.*, No. 2:12–cv–347, 2012 WL 6644387, at *15 (S.D. Ohio Dec. 20, 2012) (considering whether equitable estoppel precluded a statute of limitations defense) (citing *Doe v. Archdiocese of Cincinnati*, 116 Ohio St.3d 538, 540 (Ohio 2008)).

Consequently, the Court will apply Federal Rule of Civil Procedure 12(b)(6) standards to evaluate whether Plaintiff pleads sufficient facts to support equitable estoppel. To survive a

---

[17] In outlining Venezuelan law, Defendants stress that in 2007 the Venezuelan Supreme Court specifically held that the October 2003 opinion was a consultive opinion that did not create rights on the part of private individuals. (*See* Evseev Decl. Ex. B. at 23.) In its responsive briefing to Defendants' Motion to Dismiss, Plaintiff does not address the potential application of Venezuelan law to its equitable estoppel pleading.

motion to dismiss under Rule 12(b)(6) a complaint must contain sufficient factual matter, accepted as true , to state a facially plausible theory of relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

### b.    Merits

Equitable estoppel "is a device by which courts bind parties to presentments made upon which an opposing party relies to his . . . detriment . . . ." *Smith*, 179 Ohio App.3d at 247.  As one Ohio court has explained:

> The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 43.  A party may invoke the doctrine of equitable estoppel where it has "relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance [was] reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990).

*Cristino v. Bur. of Workers' Comp.*, 977 N.E.2d 742, 759 (Ohio Ct. App. 2012).

In Ohio, as well as other jurisdictions, "[i]t is well-settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 199 (Ohio 2006) (internal quotations omitted); *see also Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) ("A party attempting to estop the government bears a very heavy burden."). After all, "[i]f a

24

government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined." *Ohio State Bd. of Pharmacy v. Frantz,* 51 Ohio St. 3d 143, 146 (Ohio 1990). Under Ohio law, "[g]overnmental functions are those duties that are imposed upon the state as obligations of sovereignty, such as protection from crime, fires, or contagion, or preserving the peace and health of citizens and protecting their property." *Campolieti v. Cleveland*, 184 Ohio App.3d 419, 430 (Ohio Ct. App. 2009) (internal quotations omitted). Governmental functions include "[j]udicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functions." Ohio Rev. Code § 2744.01(f).

Some courts, including the Sixth Circuit, have recognized narrow exceptions allowing for the application of equitable estoppel against a government. *See, e.g., Premo*, 599 F.3d at 547. The Sixth Circuit has specifically held that "[a]t a minimum, Plaintiff must show some affirmative misconduct by the government in addition to establishing the other elements of estoppel." *Id.; see also Abercrombie & Fitch Stores, Inc. v. Am. Commercial Const., Inc.*, No. 2:08–cv–925, 2010 WL 1640883, at *3 (S.D. Ohio Apr. 22, 2010) ("Estoppel does not apply where [t]he government was not attempting to trick the party asserting estoppel, but was rather attempting, in good-faith, to advise [the party] as to its intended course of action based on the facts that it knew, and not acting with malicious intent.") (internal quotations omitted).

In this case, the Court finds that Plaintiff fails to plead a facially plausible application of equitable estoppel against Defendants.[18] Plaintiff attempts to estop Defendants from arguing that

---

[18] Of course, Plaintiff is free to rely on the Attorney General's opinion, and any underlying evidence that led to the Attorney General's decision, as evidence that the Notes are valid.

the Notes are invalid based on the Venezuelan Attorney General's October 2003 opinion that

concluded Venezuela was obligated to make payments on the Notes. This type of administrative

determination is clearly a governmental function within the meaning of Ohio law. Moreover, to

the extent any affirmative misconduct exception applies, the factual allegations do not allow the

Court to reasonably infer that Defendants, or the Venezuelan Attorney General, engaged in

misconduct with regard to the issuance of the October 2003 opinion.[19] Finally, the Court finds

no reason to treat a foreign state differently than other government entities for the purposes of

equitable estoppel. Because Plaintiff fails to plead sufficient facts to support equitable estoppel,

the Court will not estop Defendants from raising invalidity of the Notes as a defense.

### 4. Breach of Contract

In addition to bringing a claim for default on the Notes at issue, Plaintiff also pleads an

alternative claim for breach of contract based on the same operative facts as its default claim.

(*See* Am. Compl. ¶¶ 45–51.) Defendants contend that Plaintiff's breach of contract claim is

duplicative of the claim for default on the Notes and fails to state an independent claim.[20]

---

[19] Plaintiff speculates that the Venezuelan government manipulated the process by which the Attorney General's opinion was ultimately reversed. Plaintiff contends that it needs further discovery surrounding the circumstances of the Venezuelan government's reversal of the October 2003 opinion to support its equitable estoppel theory. Plaintiff, however, fails to explain why it should be relieved from general pleading standards. Plaintiff's factual allegations simply do not support, at least beyond a highly speculative level, the manipulation it suspects.

[20] In a footnote within their Motion to Dismiss under Rule 12(b), Defendants maintain that it is entitled to FSIA immunity to the extent Plaintiff's breach of contract claim is an independent claim. (*See* Mot. Dismiss 14 n.8.) In their Reply, Defendants fault Plaintiff for failing to address this contention. It is questionable whether Defendants sufficiently placed Plaintiff on notice of this issue. Nevertheless, it is clear from the pleadings, briefing, and attached documents that Plaintiff's breach of contract claim is based on the same facts as its default claim. Consequently, FSIA's commercial activity exception to immunity applies to Plaintiff's breach of contract claim for the same reasons it is applicable to the default claim. *See*

Under Ohio law,[21] "Article 3 of the Uniformed Commercial Code ("U.C.C.") governs the

creation, transfer and enforceability of negotiable instruments . . . ." *Mohammad v. Awadallah*,

No. 97590, 2012 WL 3132030, at *3 (Ohio Ct. App. Aug. 2, 2012); *see also U.S. Bank, N.A. v.*

*Coffey*, 2010-CV-0531, 2012 WL 601472, at *4 (Ohio Ct. App. Feb. 24, 2012) ("Ohio's version

of the [U.C.C.] governs who may enforce a note.") The U.C.C. defines a negotiable instrument,

in relevant part, "as an unconditional promise to pay a fixed amount of money that (1) is payable

to bearer, (2) is payable on demand or at a definite time, and (3) may contain the power to give,

maintain, or protect collateral to secure payment." *Mohammad*, 2012 WL 3132030, at *3. "The

question of whether a document is a negotiable instrument is determined from the language used

on the face of the document . . . ." *Id.*

Importantly, Ohio courts have held that "the UCC is a party's exclusive remedy when

statutory provisions are applicable to the factual circumstances of a given case." *Peters Family*

*Farm, Inc. v. Sav. Bank*, No. 10CA2, 2011 WL 497476, at *4 (Ohio Ct. App. Jan. 28, 2011); *see*

*also Dice v. White Family Cos.*, 173 Ohio App.3d 472, 480 (Ohio Ct. App. 2007) ("[T]he UCC

---

*DFRP*, 622 F.3d at 515–18 (outlining how Venezuela's refusal to pay the promissory notes
caused a direct effect in the United States).

[21] The Court recognizes the potential application of other bodies of law, such as Swiss
law, to the Notes in question. In analyzing the breach of contract claim, however, both parties
appear to presume that Ohio law applies. Specifically, neither party advocates for the application
of foreign law nor do the parties contend that applying foreign law would impact the outcome.
*See Wendy's Intern.*, 2007 WL 710242, at *5 (recognizing that an Ohio court should apply local
law unless a party meets the burden of showing that foreign law requires a different result). For
the reasons described below, Plaintiff's breach of contract claim fails as an independent claim
under Ohio law. The Court will not perform a choice-of-law analysis *sua sponte* nor will it
consider whether the outcome would be the same applying a different body of law. *See GBJ*
*Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) ("'Unlike jurisdictional
issues, courts need not address choice of law questions *sua sponte*.'") (quoting *In re Korean Air*
*Lines Disaster*, 932 F.2d 1475, 1495 (D.C. Cir. 1991)).

provides the exclusive remedy where the dispute is governed by its statutory provisions. Common law causes of action may not be raised to circumvent the UCC['s rights, claims, and defenses where the statute applies."); *NCS Healthcare, Inc. v. Fifth Third Bank*, No. 85198, 2005 WL 1484025, at *7 (Ohio Ct. App. June 23, 2005) (same).

Here, the Court finds that Plaintiff fails to state an independent claim for breach of contract separate from its claim for default on the Notes.[22]  The Amended Complaint reflects that Plaintiff's breach of contract claim is based on the same operative facts as its default claim. Specifically, the pleadings make clear that both causes of action are attempting to enforce the Notes, which are attached to the Amended Complaint. Plaintiff fails to allege facts of any agreement separate from the Notes and the purported extension of their maturity date. Finally, the language of the Notes reflect that they are, or at least purport to be, negotiable instruments within the meaning of Ohio law. *Cf. Mohammad*, 2012 WL 3132030, at *3–4 (holding that the promissory note was a negotiable instrument, as opposed to a contract, for the purposes of determining the applicable statute of limitations).

Although a plaintiff is generally able to plead alternative legal theories, the above authority makes clear that the Ohio UCC provides the exclusive remedy to enforce negotiable instruments. *Cf. NCS*, 2005 WL 1484025 at *8 (holding that a plaintiff's "common law breach of contract and negligence claims cannot be raised where the UCC already governs."). Under these circumstances, Plaintiff fails to plead a viable breach of contract claim separate and independent from her claim to enforce the Notes in question. Accordingly, Plaintiff's breach of

---

[22]  In reaching this conclusion, the Court applies the general standard for Rule 12(b)(6) outlined above.

contract claim is dismissed.

### 5.    Default on Notes

Finally, Plaintiff also brings a claim for default based on Defendants' refusal to make

payments on the Notes. Within its Rule 12(b) Motion, Defendants seek dismissal of Plaintiff's

cause of action on three grounds. Specifically, Defendants contend that (1) Plaintiff's reliance on

the Venezuelan Attorney General's October 2003 opinion warrants dismissal of the default claim

in its entirety; (2) the act of state doctrine requires dismissal; and (3) Plaintiff's claims are

untimely under the applicable statute of limitations.

### a.    Reliance on October 2003 Attorney General Opinion

As detailed above, Defendants maintain—and the Court agrees—that Plaintiff fails to

adequately plead an equitable estoppel theory. Defendants take this contention a step further by

asserting that Plaintiff's reliance on an estoppel theory requires dismissal of the entire claim for

default on the Notes.

Upon review, the Court finds that dismissal of Plaintiff's default claim on such grounds

would be improper. The record and pleadings reflect that in purchasing the Notes in question,

and in bringing this action, Plaintiff relied in great part on the Venezuelan Attorney General's

October 2003 opinion. Nevertheless, to say that the default claim exclusively relies on an

estoppel theory misstates the pleadings. Plaintiff maintains that it purchased promissory notes

that a national bank issued and that the Venezuelan government backed. (Am. Compl. ¶¶ 7, 11.)

Plaintiff further contends that it is the owner and holder of the Notes, demanded payment after

the Notes maturity, and that Defendants have refused to honor the Notes. (*Id.* at ¶¶ 34–37.)

Although Plaintiff also stresses the impact of the Attorney General's opinion, it does not solely

rely on an estoppel theory.

### b.    Act of State Doctrine

Defendants also contend that the Court must dismiss this action pursuant to the act of state doctrine. According to Defendants, Plaintiff's default claim impermissibly challenges the actions of Venezuela's executive and judicial branch.

Under the act of state doctrine, "the courts of one state will not question the validity of public acts (acts *jure imperii*) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004). "Unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the act of state doctrine provides foreign states with a substantive defense on the merits." *Id.* "[A]ct of state analysis is not generally guided by an inflexible and all-encompassing rule . . . ." *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1026 (6th Cir. 1990) (internal quotations omitted). Rather, "the act of state doctrine typically involves an assessment of the likely impact on international relations that would result from judicial consideration of the foreign sovereign's act." *Id.* (internal quotations omitted). "The party moving for the [act of state] doctrine's application has the burden of proving that dismissal is an appropriate response to the circumstances presented in the case." *Id.* (internal quotations omitted).

There are a number of limitations to the act of state doctrine. First, "as a threshold matter, '[a]ct of state issues only arise when a court *must decide*-that is, when the outcome of the case turns upon the effect of official action by a foreign sovereign.'" *Id.* (emphasis added) (quoting *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l.*, 493 U.S. 400, 406 (1990)).

30

Furthermore, the act of state doctrine applies only to public actions "performed by other sovereigns *within their own borders*." *Altmann*, 541 U.S. at 700 (emphasis added); *see also Allied Bank Int'l. v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 520 (2nd Cir. 1985) ("Acts of foreign governments purporting to have extraterritorial effect—and consequently, by definition, falling outside the scope of the act of state doctrine—should be recognized by the courts only if they are consistent with the law and policy of the United States."); *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-3073, 2007 WL 2669841, at *8 (N.D. Cal. Sept. 7, 2007) ("The act of state doctrine ordinarily does not preclude judicial review of the extraterritorial effects of acts of state."). Federal courts considering the extraterritorial effect of foreign state actions involving property have generally looked to the situs of the property in question. *See, e.g.*, *Trinh v. Citibank, N.A.*, 850 F.2d 1164, 1172 (6th Cir. 1988) ("Generally speaking, an act of state will go unquestioned in United States courts only to the extent that it affects property whose 'situs' is within the territorial jurisdiction of the acting state."); *Drexel Burnham Lambert Group Inc. v. Galadari*, 777 F.2d 877, 881 (2nd Cir. 1985) (holding that the situs of debt—for purposes of the act of state doctrine—was not in Dubai when the terms of the relevant promissory note provided that the note was payable in United States dollars at the place of the holder's designation); *Allied Bank Int'l*, 757 F.2d at 521–22 (holding that act of state doctrine did not apply because situs of debt was not in the foreign state).

In this case, at least at the pleading stage, the Court cannot dismiss Plaintiff's claim based on the act of state doctrine.[23] It is not apparent from the pleadings that Plaintiff's action that the

---

[23] The act of state doctrine is an affirmative defense placing the burden on the defendant. *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2nd Cir. 2012). Accordingly, dismissal on the pleadings is only proper "on the basis of that doctrine when its applicability is shown on

Court must decide the validity of official actions of the Venezuelan government. Defendants contend that Plaintiff's action implicates (1) the Venezuelan Supreme Court's 2007 decision, and (2) the Ministry of Finance and Attorney General's combined actions resulting in a December 2003 reversal of the Attorney General's October 2003 opinion.[24] Nevertheless, Plaintiff's default claim, in and of itself, does not challenge the Supreme Court decision.[25] The Supreme Court decision dealt with the effect of the Attorney General's 2003 opinion rather than the ultimate issue of the Notes validity. Moreover, it is not clear from the face of the Complaint, that Plaintiff's claim requires the Court to infringe on official actions of the Venezuelan executive branch. Plaintiff's Amended Complaint does not acknowledge that the Attorney General reversed the October 2003 opinion, and, based on the current record, the parties dispute whether such a reversal actually occurred.[26]

Even assuming that Plaintiff's default claim sufficiently challenges official action of the Venezuelan government, such actions are not confined to the borders of Venezuela. Specifically,

---

the face of the complaint." *Id.*; *see also Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp.2d 736, 755 (S.D.N.Y. 2004) ("As a substantive rather than a jurisdictional defense, the Act of State doctrine is more appropriately raised in a motion for summary judgment than in a motion to dismiss.").

[24] The parties dispute wether the 2007 decision is an act of state within the meaning of the doctrine. The Court finds it unnecessary to reach this issue.

[25] As the Court has dismissed Plaintiff's equitable estoppel theory, it need not decide whether the act of state doctrine would bar equitable estoppel.

[26] Defendants submit a December 2003 letter, purportedly from the Attorney General, revoking the October 2003 opinion and ratifying the opinion of the Ministry of Finance finding the Notes not viable. (*See* Flores Decl. Ex. Q.) Plaintiff, however, questions whether the Attorney General actually reversed the opinion. (*See* Pl.'s Mem. Opp'n 24.) The Court will not resolve this dispute at the pleading stage.

from the pleadings—and the Notes attached—the Court can reasonably infer that the situs of the debt is not Venezuela. The face of the Notes reflect that they are payable in United States dollars. Moreover, the Sixth Circuit has already concluded—assuming the Notes' validity—that the Notes are payable at a location of the bearer's designation. *D.R.F.P.*, 622 F.3d at 517 ("[U]nder the terms of the notes, including the provision that Swiss law will be applied, the parties implicitly agreed to leave it to the bearer to demand payment of the notes anywhere, including, perforce, Columbus, Ohio, the bearer's place of business.") Finally, from Plaintiff's pleadings the Court can reasonably infer that at the time of the government actions in question the Notes were trading on international markets and Defendants were aware of such activity. (*See* Am. Compl. ¶ 25.) Under these circumstances, at least for the purposes of a motion to dismiss, the act of state doctrine does not apply to Plaintiff's claim for default.[27]

### c.    Statute of Limitations

In a separate contention for dismissal of the default claim, Defendants assert that Plaintiff's claim is untimely. Plaintiff filed the present action for default on the Notes in August 2004. Defendants contend that based on the Notes' maturity date of December 8, 1991, Plaintiff's cause of action is untimely applying any of the potential statutes of limitations. Plaintiff contends that their claim is timely because the Venezuelan government extended the maturity period until December 1999.

---

[27] Plaintiff's also contend that the act of state doctrine is inapplicable due to the commercial nature of Defendants' activities in this case. In 1976, a plurality of Supreme Court Justices indicated that "the concept of an act of state should not be extended to include the repudiation of a purely commercial obligation owed by a foreign sovereign or by one of its commercial instrumentalities." *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695 (1976) (plurality). Because the Court finds the act of state doctrine does not apply at this stage, the Court will not address whether any such exception would apply.

"Because the statute of limitations is an affirmative defense, the burden is on the

defendant to show that the statute of limitations has run." *In re Arctic Exp. Inc.*, 636 F.3d 781,

802 (6th Cir. 2011). The Sixth Circuit has recently addressed consideration of such a defense on

the pleadings:

> The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a
> plaintiff generally need not plead the lack of affirmative defenses to state a valid
> claim, see Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim "
> (emphasis added)); *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d
> 798 (2007). For this reason, a motion under Rule 12(b)(6), which considers only the
> allegations in the complaint, is generally an inappropriate vehicle for dismissing a
> claim based upon the statute of limitations. But, sometimes the allegations in the
> complaint affirmatively show that the claim is time-barred. When that is the case . . .
> dismissing the claim under Rule 12(b)(6) is appropriate. *See Jones*, 549 U.S. at 215,
> 127 S.Ct. 910 ("If the allegations ... show that relief is barred by the applicable statute
> of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Walburn v. Lockheed*

*Martin Utility Servs., Inc.*, 443 F. App'x 43, 47 ("The statute of limitation, although an

affirmative defense, may be the basis for dismissal under Rule 12(b)(6) when the facts are

definitively ascertainable from the pleadings and conclusively establish the affirmative

defense.").

As the parties recognize, the limitations periods under Switzerland and Venezuela law are

potentially shorter than that of Ohio. Accordingly, the Court must first decide the applicable law.

As detailed above, "[i]n FSIA cases, [the Court] use[s] the forum state's choice of law rules to

resolve all issues, except jurisdictional ones." *O'Bryan*, 556 F.3d at 381. The Ohio Supreme

Court has formally adopted the 1971 version of the Restatement as the governing law for conflict

issues. *Frisch v. Nationwide Mut. Ins. Co.*, No. 2:12–cv–415, 2012 WL 5595207, at *9 (S.D.

Ohio Nov. 15, 2012). Under this standard, "[w]hen there is a conflict between two states'

34

statutes of limitations, the Restatement provides that [a]n action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state." *Matrix Acquisitions, LLC v. Hooks*, No. 10CA1112, 2011 WL 2464183, at *2 (Ohio Ct. App. June 15, 2011).

Defendants raise the possibility that Ohio's borrowing statute applies to this case. The borrowing statute specifically provides:

> No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code § 2305.03(B). Upon review, the Court concludes that the borrowing statute does not apply to this case. The borrowing statute became effective on April 7, 2005. *Sonic Auto., Inc. v. Chrysler Ins. Co.*, No. 1:10–cv–717, 2011 WL 4063020, at *4 (S.D. Ohio Sept. 13, 2011). This Court has consistently held that the borrowing statute does not apply retroactively. *See, e.g.*, *id.* (holding that the statute does not apply retroactively to claims accruing prior to the effective date); *Arandell Corp. v. Am. Elec. Power Co., Inc.*, No. 2:09–cv–231, 2010 WL 3667004, at *6 (S.D. Ohio Sept. 15, 2010) (same); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp.2d 899, 918–19 (S.D. Ohio 2009) (same). Here, Plaintiff brought this action, and its claims accrued, prior to the effective date.

Based on the above authority, Ohio's statute of limitations applies. Under Ohio law, "an action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date . . . ." Ohio Rev. Code § 1303.16(A).

Here, it is not clear from the face of the Amended Complaint that Plaintiff's action is time

35

barred. The Notes in question both state on their face that they have a maturity date of December 8, 1991. Applying this date, Plaintiff failed to bring this action in a timely fashion. Nevertheless, Plaintiff asserts that in December 1991 the Minister of Hacienda (precursor to the Minister of Finance) extended the maturity date of the Notes until December 1999. (Am. Compl. ¶ 11.) Applying the extension, Plaintiff's August 2004 filing was within the six-year deadline. Under these circumstances, it is not readily ascertainable from the pleadings that Plaintiff's claim is untimely.

Defendants suggest that any extension of the Notes' maturity date is unenforceable. For example, Defendants stress that, according to the pleadings, the extension was "unilateral." (*Id.*) Assuming that the Venezuelan government set forth an extension to the maturity dates of the Notes, as the Court must at the pleading stage,[28] it is questionable whether Defendants could rely on the unenforceable nature of such an extension to benefit from the statute of limitations. *Cf. Wilhelmy v. 15201 Detroit Corp.*, No. 71290, 1997 WL 298052, at *3 (Ohio Ct. App. June 5, 1997) ("[E]ven a gratuitous oral agreement to modify a prior written agreement is binding if it is acted upon by the parties and if a refusal to enforce the oral modification would result in injury or damage to the promisee."). Regardless, Plaintiff's contention concerning extension, at the very least, makes it unclear from the face of the pleadings whether the affirmative defense applies. Under such circumstances, and given that a plaintiff is not generally obligated to plead the lack of an affirmative defense, dismissal at this time would be inappropriate.

---

[28] Defendants contend that Plaintiff's pleadings concerning the extension are conclusory, and that the Court need not credit it. The Court disagrees. Although there is certainly legal significance to the alleged extension, Plaintiff is still pleading a factual assertion: that the Minister of Hacienda extended the Notes' maturity dates.

The Court notes, however, that the current record raises serious concerns as to whether Plaintiff's claim for default on the Notes is timely. Specifically, there are legitimate questions as to whether an extension of the Notes' maturity dates actually occurred and the circumstances surrounding the purported extension. Although further discovery is likely necessary, given the age of this case—and the potentially case-dispositive nature of the issue—the Court will hold a status conference, which it will set through a separate order, to establish a schedule for resolution of this issue.

## C.    Motion for Certification

In its remaining Motion, Defendants request that the Court certify this action, pursuant to 28 U.S.C. § 1292(b), for interlocutory appeal of the Court's October 23, 2012 Opinion and Order. On October 23, 2012, the Court issued an Opinion and Order considering various private and public interests outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) and ultimately denying *forum non conveniens* dismissal. The Court specifically concluded, balancing the relevant factors, that it should defer to Plaintiff's forum choice. (Opinion and Order 20–21, ECF No. 263.) Defendants move for certification of two issues (1) whether the Court erred by failing to find that comity overwhelmingly supports dismissal, and (2) whether the Court erred in giving Plaintiff's forum choice substantial deference.

### 1.    Standard

Pursuant to 28 U.S.C. § 1292:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

As the Sixth Circuit has described, through § 1292(b) "Congress . . . chose to confer on district courts first line discretion to allow interlocutory appeals." *Turi v. Main Street Adoption Servs., LLP*, 633 F.3d 496, 504 (6th Cir. 2011). Allowing for interlocutory appeal is generally disfavored and should be applied sparingly, in only exceptional cases. *U.S. ex rel. Elliott v. Brickman Group Ltd., LLC*, 845 F. Supp.2d 858, 863 (S.D. Ohio 2012). "Attractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence." *Id.* (internal quotations omitted).

In determining whether to certify a matter for interlocutory appeal, the Court must decide whether "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). "The burden of showing exception circumstances justifying an interlocutory appeal rests with the party seeking review." *Trimble v. Bobby*, No. 5:10–CV–00149, 2011 WL 1982919, at *1 (N.D. Ohio May 20, 2011).

The first certification factor requires two elements (1) a question of law, (2) that is controlling. *U.S. ex rel. Elliott*, 845 F. Supp.2d at 865. "A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 350. "A legal question of the type envisioned in § 1292(b), however, generally does not include matters within the discretion of the trial court." *Id.* "Interlocutory appeals are intended for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve

38

beyond the surface of the record in order to determine the facts." *Sanderson Farms, Inc. v.*

*Gasbarro*, No. 2:07-CV-00857, 2007 WL 3402539, at *3 (S.D. Ohio Nov. 13, 2007); *see also*

*U.S. ex rel. Elliott*, 845 F. Supp.2d at 864 ("Perhaps most significantly for this case, § 1292(b) is

not appropriate for securing early resolution of disputes concerning whether the trial court

properly applied the law to the facts.") (internal quotations omitted).

> With regard to the second certification factor:

> [A] substantial ground for difference of opinion exists only when 1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; 2) the question is difficult and of first impression; 3) a difference of opinion exists within the controlling circuit; or 4) the circuits are split on the question.

*U.S. ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03–CV–00167, 2009 WL

485501, at *1 (S.D. Ohio Feb. 26, 2009).

### 2.    Application

In this case, Defendants fail to establish that this matter is proper for interlocutory appeal.

First, the Court is not convinced that the *forum non conveniens* analysis in this case is conducive

with review of an isolated legal question.[29] As the Sixth Circuit has acknowledged, the doctrine

of *forum non conveniens* "is a flexible one, requiring the court to weigh multiple factors relating

to fairness and convenience based on the particular facts of the case." *Rustal Trading US, Inc. v.*

---

[29] This is not to say that a *forum non conveniens* analysis will never lend itself to interlocutory appeal. Defendants cite a number of cases in which district courts, in their discretion, determined that such an analysis was appropriate for interlocutory review. In this case, however, the Court's analysis balanced a variety of fact-intensive factors, making it difficult to isolate a concrete controlling legal issue. *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 212 F. Supp.2d 903, 906 (S.D. Ind. 2002) (holding that issue concerning *forum non conveniens* decision was not suitable for interlocutory appeal in part because " a forum non conveniens decision is inherently fact-sensitive").

*Makki*, 17 F. App'x 331, 335 (6th Cir. 2001). Although Defendants attempt to frame their

contentions as discrete legal questions—concerning comity and the proper deference to forum

selection—any review of the Court's analysis in these areas would be highly fact intensive and

would likely require consideration of how the Court weighed other factors within its overall

balancing analysis. Moreover, Defendants do not appear to actually contest the legal standards

the Court applied,[30] but instead the weight the Court ultimately assigned to the various factors

based on the facts of this case. *Cf. Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris

Inc.*, 29 F. Supp.2d 825, 833 (N.D. Ohio 1998) ("Instead of raising an issue of controlling law, it

appears that the defendants seek interim review of how this Court applied established law to the

somewhat novel, factual circumstances of this case.").

   Second, Defendants have failed to establish a substantial ground for difference of

opinion. Although fact intensive, the application of balancing factors for the purposes of *forum

non conveniens* is not a novel or overly difficult endeavor. Moreover, the fact that some federal

courts, faced with different factual scenarios, applied different weight to factors (such as comity)

within the course of their own balancing analysis is insufficient to establish a split of authority.[31]

---

   [30] At best, Defendants contend that the Court applied the wrong legal standard in
weighing the Plaintiff's forum choice. Specifically, Defendants infer from the Court's decision
to give Plaintiff's forum choice "typical" deference that the Court disregarded a sliding-scale
approach. Any analysis of this issue, however, would still involve a fact intensive inquiry into
whether, under the circumstances of this case, Plaintiff was due the substantial deference the
Court must generally afford to a plaintiff's forum choice. *Cf. Duha v. Agrium, Inc.*, 448 F.3d
867, 873–74 (6th Cir. 2006) ("In general, the standard of deference for a U.S. plaintiff's choice
of a home forum permits dismissal only when the defendant establish[es] such oppressiveness
and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may
be shown to be slight or nonexistent.") (internal quotations omitted).

   [31] After all, within the context of *forum non conveniens*, a party will nearly always be
able to find court decisions in which one particular balancing factor was given significant weight.

Finally, under the specific circumstances of this case, the Court is not persuaded that an intermediate appeal will advance the ultimate termination of this litigation. This case is over eight years old and one interlocutory appeal has already occurred. Although the issue of *forum non conveniens* is potentially case dispositive, Defendants would face the uphill battle of demonstrating that the Court abused its discretion. If unsuccessful, such an interlocutory appeal would no doubt cause delay to this action. Moreover, for the reasons described within this Opinion and Order, Plaintiff's action is now limited to one cause of action. Under these circumstances, it appears that proceeding in this Court is likely to result in a more efficient resolution of this case.

## III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer (ECF No. 274) is **DENIED**; Defendants' Motion to Dismiss (ECF No. 275) is **GRANTED** in part and **DENIED** in part subject to the conditions within this Opinion and Order; and Defendants' Motion for Certification (ECF No. 276) is **DENIED**. The Court **DISMISSES** the promissory estoppel and negligence claims with prejudice upon Plaintiff's amendment to the pleadings. Plaintiff is **DIRECTED** to file a Second Amended Complaint within **SEVEN (7) DAYS** of this Opinion and Order withdrawing these claims. The Court will schedule a status conference with the parties, through separate order, to discuss resolution of the statute of limitations issue.

**IT IS SO ORDERED.**

_5-14-2013_
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

41