IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


DRFP, LLC,                           :

          Plaintiff,                 :

     v.                              :        Case No. 2:04-cv-793

The Republica Bolivariana de
Venezuela, et al.,                   :        JUDGE EDMUND A. SARGUS, JR.
                                              Magistrate Judge Kemp
          Defendants.                :


OPINION AND ORDER

     On March 3, 2015, Albert J. Lucas, one of Venezuela's
attorneys, signed a subpoena duces tecum commanding attorney
Pierce E. Cunningham to produce a number of documents at Calfee,
Halter & Griswold's Cincinnati office by March 16, 2105.  The
subpoena contained 28 definitional paragraphs and included
nineteen separate categories of documents to be produced, but,
because of the fact that several of the requests specified a
large number of people with whom Mr. Cunningham may have
communicated, the request easily encompassed over 100 different
sets of documents.  A second, virtually identical, subpoena was
sent to one of Mr. Cunningham's clients, Venospa, LLC, an entity
which had attempted to intervene in this case to assert a claim
based on Bandagro notes which it owns.  Apparently, there was no
advance communication between any of Venezuela's lawyers and Mr.
Cunningham about these subpoenas.

     Ten days later, Mr. Cunningham filed a document entitled
"Notice of Compliance with Subpoena and Motion of Trial Counsel,
Pierce E. Cunningham and Venospa, LLC for Sanctions Pursuant to
Fed.R.Civ.P. 45."  (Doc. 496).  The gist of that document is Mr.
Cunningham's assertion (bolstered by a "Report" attached as

Exhibit B) that he had spent a good deal of time reviewing the responsive documents and that all were either work product or attorney client communications and could not be produced.  He also asserted in his memorandum that the subpoenas were burdensome and vexatious and that it would take many more attorney hours to determine whether any production of documents were possible.

Venezuela's response is, unfortunately but predictably, another attempt on the part of its attorneys to paint every party they deal with in this case - from the Plaintiff and its principal to a host of non-party targets of discovery - as criminals, liars, and frauds.  The Court has observed, but has refrained from commenting upon until now, this approach, which only serves to obscure the legal issues being presented to the Court for resolution and which reflects poorly on the authors of these diatribes.  Just as an example, Venezuela's opposing memorandum and motion to compel (Doc. 520) describes, in the very first paragraph, Carlos Delgado Morean, Venospa's principal, as a "politically connected Venezuelan double-dealer," and it accuses both Mr. Delgado and Mr. Cunningham of being "not interested in complying with the subpoena" but instead "interested in stymying Venezuela's discovery efforts and preventing the Court from discovering the full history of the duplicitous Delgado and his involvement with Gruppo Triad's efforts to dupe the Ministry of Finance into finding in Gruppo Triad's claim for payment on bogus Bandagro notes."  Id. at 5.  Venezuela thinks poorly of Mr. Delgado and may have reason to do so; to attribute such motives to Mr. Cunningham without any foundation, however, could be viewed as more than just overblown rhetoric, and does nothing to advance the legal dialogue which necessarily has grown out of the service of and response to a Rule 45 discovery subpoena.

After peeling away the layers of name-calling contained in

-2-

Venezuela's briefs, two key issues have emerged. The first is
whether the privilege log prepared by Mr. Cunningham is
sufficiently detailed. A subissue relating to that question is
how the "common interest" doctrine might apply here. The second
issue is whether the crime-fraud exception - which the Court
found potentially applicable here to certain actions taken by
Gruppo Triad and its former principal, James Pavanelli, with
respect to the notes at issue in this case - can also be used to
compel, at a minimum, an *in camera* inspection of some or all of
the documents which Mr. Cunningham has withheld. The Court
addresses each of these separately.

### I. The Privilege Logs

Fed.R.Civ.P. 45(e)(2) reads as follows:

(2) ***Claiming Privilege or Protection***.

(A) *Information Withheld*. A person withholding
subpoenaed information under a claim that it is
privileged or subject to protection as
trial-preparation material must:

(I) expressly make the claim; and

(ii) describe the nature of the withheld documents,
communications, or tangible things in a manner that,
without revealing information itself privileged or
protected, will enable the parties to assess the claim.

The privilege logs in this case, which are attached to Doc. 529,
are fairly generic. Each identifies, by numbers corresponding to
the document categories set forth in the subpoenas, which
privilege is being asserted by two characterizations: either
"Attorney Client" or "Common Interest." Where no documents
exist, the word "None" appears on the log. No additional
information about dates, senders, or recipients is provided.

Venezuela's reply memorandum asserts these logs do not
comply with Rule 45's requirements. It also asserts, somewhat

conflictingly, that the logs do not delineate how the common
interest doctrine applies here, and that Mr. Cunningham's and
Venospa's claim of a common interest with others whom Venezuela
has accused of fraud is evidence that the crime-fraud exception
applies here.  The Court agrees with the first contention; the
privilege logs do not, with the possible exception of listing of
persons or entities who were actually Mr. Cunningham's clients or
Venospa's lawyers, provide sufficient information to permit the
Court to assess the validity of the claim of privilege.  See,
e.g., Avis Rent A Car System, LLC v. City of Dayton, Ohio, 2013
WL 3781784 (S.D. Ohio July 18, 2013).  In particular, they do not
explain how the "common interest" doctrine, which allows the
attorney-client privilege to be asserted for documents reflecting
communications between two or more clients, or their separate
attorneys, who both share a common interest in a legal matter and
who have agreed to share information about it, applies here.
Much more detail would be needed to assess that claim, but,
perhaps because of the procedural posture of the matter - the log
was not produced until Mr. Cunningham and Venospa filed what they
deemed a reply, and the challenge to the log's sufficiency did
not come until Venezuela had filed a reply in support of its
motion to compel - they might not have believed they had another
opportunity to address the issue.  Consequently, the Court will
direct a supplementation of the logs to occur within fourteen
days.

## II.  The Crime-Fraud Exception

The Court has previously ruled that Venezuela made out a
prima facie case of fraud with respect to Gruppo Triad and its
efforts to redeem the notes which are the subject of this case.
Venezuela asserts that even though the documents it seeks from
Mr. Cunningham and Venospa did not come into existence until
years later, they are part and parcel of the same scheme to

-4-

present "bogus" notes to the Venezuelan government for redemption, and that the crime-fraud exception therefore trumps any privilege that might otherwise exists with respect to these documents.

In its various filings on this issue, Venezuela does not appear to assert that Mr. Delgado was part of any effort to forge Bandagro notes, something which Venezuela accuses Gruppo Triad of. Rather, its theory appears to be that when Mr. Delgado assisted in the effort to validate the notes which Skye now holds (which are a different series of notes from the ones which Mr. Delgado and, later, Venospa acquired) he was induced by the promise of a reward to slant his efforts toward validation. According to Venezuela, his conclusions from his inspection of Gruppo Triad's notes that they were genuine led to the initially favorable report by Venezuelan authorities about those notes, but Mr. Delgado's conflict of interest - his working for Gruppo Triad at the same time - improperly influenced that decision. Venezuela claims that in exchange for his work, Gruppo Triad gave Mr. Delgado $100 million worth of notes from another series (not the same series involved in his investigation or the same series owned by Skye), and it is those notes he attempted to sue on when he moved to intervene in this case. Venezuela claims that this conduct was all part of a single fraudulent scheme and that Mr. Cunningham's otherwise privileged communications with his clients (including Mr. Delgado and Venospa) about the litigation effort are sufficiently related to Gruppo Triad's original alleged fraud - the forging of the notes, or the acquisition and attempted redemption of notes which Gruppo Triad knew to have been forged - that the privilege has been overcome.

Boiled down to its essence, Venezuela is asserting that once someone completes a course of fraudulent or criminal conduct that results in, as here, the creation of some document which purports

to give the holder of the document the right to sue upon it,
every communication the holder has with an attorney about that
right, including communications leading up to the filing (or
attempted filing) of a legal action is an unprivileged
communication.  That simply is not the law.

As the Court of Appeals for the Ninth Circuit stated in In
re Napster Copyright Litigation, 479 F.3d 1078 (9th Cir. 2006),
abrogated on other grounds by Mohawk Industries, Inc., v.
Carpenter, 558 U.S. 100 (2009),

> A party seeking to vitiate the attorney-client
> privilege under the crime-fraud exception must satisfy
> a two-part test. First, the party must show that "the
> client was engaged in or planning a criminal or
> fraudulent scheme when it sought the advice of counsel
> to further the scheme." In re Grand Jury Proceedings,
> 87 F.3d [377 (9th Cir. 1996)] at 381 (internal
> quotation marks omitted). Second, it must demonstrate
> that the attorney-client communications for which
> production is sought are "sufficiently related to" and
> were made "in furtherance of [the] intended, or
> present, continuing illegality." Id. at 382–83
> (internal quotation marks omitted) (emphasis added);
> see also In re Richard Roe, Inc., 68 F.3d 38, 40 (2d
> Cir.1995).
>
> The attorney need not have been aware that the client
> harbored an improper purpose. Because both the legal
> advice and the privilege are for the benefit of the
> client, it is the client's knowledge and intent that
> are relevant. In re Grand Jury Proceedings, 87 F.3d at
> 381–82; see also [United States v.] Chen, 99 F.3d [1495
> (9th Cir. 1996)] at 1504. The planned crime or fraud
> need not have succeeded for the exception to apply. The
> client's abuse of the attorney-client relationship, not
> his or her successful criminal or fraudulent act,
> vitiates the privilege. In re Grand Jury Proceedings,
> 87 F.3d at 382.

Given the timing and apparent scope of Mr. Cunningham's
representation of Mr. Delgado and Venospa, which did not begin
until 2009, Venezuela cannot be asserting that these

-6-

communications assisted Mr. Delgado or any of his alleged
partners in fraud, including Gruppo Triad, in activities such as
forging the notes or attempting to persuade entities within the
Venezuelan government that the notes were genuine.  In fact, by
the time Mr. Cunningham had been retained, whatever influence Mr.
Delgado may have had on the governmental approval process had
ended, and it was absolutely clear that the Venezuelan government
took the position that no Bandagro notes, and particularly ones
which had ever been possessed by Gruppo Triad, were authentic or
valid.  The crime or fraud which Venezuela alleges had long been
completed by that time and had proven, to that point,
unsuccessful, and there is no evidence that communications
between Mr. Delgado, Venospa, and Mr. Cunningham played any part
in the creation, execution, or unsuccessful completion of the
alleged scheme.

Following the language in Napster, quoted above, and similar
language in other cases such as Martensen v. Koch, 201 F.R.D.
562, 574 (D. Colo. 2014)("the evidence must demonstrate that the
client was engaged in or was planning the criminal conduct when
it sought the assistance of counsel and that the assistance was
obtained in furtherance of the conduct or was closely related to
it"), there is no evidence that Mr. Delgado was engaged in
planning a crime or fraud when he sought Mr. Cunningham's
counsel.  There is similarly no evidence that his communications
with Mr. Cunningham were "related" to the alleged fraud in the
sense that they assisted him in executing or carrying out the
scheme.  That had all happened long before.  And, as the court in
United States v. Sabbeth, 34 F.Supp.2d 144, 151 (E.D.N.Y. 1999)
observed, "even for ongoing schemes, only communications geared
to further criminal conduct implicate the exception."  To the
extent that Venezuela is arguing that simply filing suit on the
notes, even if they were fraudulently created, is itself either

-7-

fraud or criminal conduct, the Court rejects that expansive notion.

The Court is mindful, when considering this issue, of the basic premise upon which the crime-fraud exception rests. "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' ... between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." <u>United States v. Zolin</u>, 491 U.S. 554, 563 (1989)(internal citations omitted). It is one thing to conclude, as this Court has done, that communications with attorneys about the creation or attempted sale of allegedly fraudulent notes, or made in furtherance of such activities, may be sufficiently related to the commission or perpetration on an ongoing fraud so as to justify an *in camera* inspection of the communications. It is quite another to conclude that any communication with any attorney, no matter how long after all of the activities constituting the alleged fraud have ceased, is unprivileged if it relates in any way to an effort to enforce the rights purportedly created by the fraud. If that were the case, Skye has had no privileged communications with its current trial counsel because all of its communications with its trial attorneys "relate" to Skye's effort to collect on allegedly fraudulent notes, just in the same way that Mr. Delgado's or Venospa's communications with Mr. Cunningham appear to have done. No court appears to have gone that far, and this Court will not be the first to do so.

### III. <u>Order</u>

Based on the foregoing, Mr. Cunningham and Venospa shall, within fourteen days, supplement their privilege logs with respect to the claim of common interest, providing additional information to "enable the parties to assess the claim" as required by Rule 45. Any disagreements about the adequacy of the

logs, as supplemented, or the legal sufficiency of the claim of
common interest, shall be brought to the Court's attention by way
of a request for an informal discovery conference. Any non-
privileged responsive documents shall also be produced within
fourteen days to the extent that has not yet occurred. The Court
denies the motions relating to this issue, including Doc. 496, in
all other respects, but reserves the right to shift costs of
compliance with the subpoenas to Venezuela should that appear
appropriate under Rule 45.

## IV. <u>Motion to Reconsider</u>

Any party may, within fourteen days after this Order is
filed, file and serve on the opposing party a motion for
reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A),
Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01,
pt. IV(C)(3)(a). The motion must specifically designate the
order or part in question and the basis for any objection.
Responses to objections are due fourteen days after objections
are filed and replies by the objecting party are due seven days
thereafter. The District Judge, upon consideration of the
motion, shall set aside any part of this Order found to be
clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for
reconsideration has been filed unless it is stayed by either the
Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.


/s/ Terence P. Kemp
United States Magistrate Judge