```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

DRFP, LLC,                         :

       Plaintiff,              :

   v.                              :        Case No. 2:04-cv-793

The Republica Bolivariana de
Venezuela, et al.,                 :        JUDGE EDMUND A. SARGUS, JR.
                                            Magistrate Judge Kemp
       Defendants.             :


<u>OPINION AND ORDER</u>

    As directed by the Court in a prior Opinion and Order (Doc. 548), a number of documents have been submitted to the Court for an *in camera* review to determine whether the documents - all of which have been designated as containing attorney-client privileged communications - should be produced in discovery based on application of the crime-fraud exception.  Without repeating in full the basis for the prior Opinion and Order, the Court concluded that Venezuela had made out a *prima facie* case for application of the exception based upon its contention that Gruppo Triad, which is Plaintiff Skye's predecessor in interest with respect to the promissory notes at issue in this case, had committed some type of crime or fraud in connection with its acquisition of and attempt to redeem the notes (or, indeed, was somehow involved in forging the notes, the validity of which Venezuela steadfastly denies).  The Court directed the submission of a number of documents involving communications between the law firm of Crabbe, Brown, and Jones (CBJ) and either Gruppo Triad or its principal, James Pavanelli, concluding that despite CBJ's assertion that there is no evidence that any of these communications furthered any crime or fraud which either Gruppo

Triad or Mr. Pavanelli might have committed in connection with the notes, an *in camera* review (to which CBJ consented) was warranted.  The order also applied to certain documents listed as privileged by Lara Pavanelli, the current principal of Gruppo Triad.

In a separate stipulated order (Doc. 578), the Court, noting that some of the documents submitted by Ms. Pavanelli were in Italian, directed the electronic submission of a certified translation of those documents (plus one additional document).  That submission was accompanied by a compendium of individuals whose names appear on the documents.  It appears from that compendium that the only attorneys in the group are Siro Schianchi, Matteo Quadranti (who represented another note-holder, Woodstrite Investments), Bernadino Serra, Miguel Jacir Hernandez, and members of CBJ, including Luis Alcalde, Jeffrey Brown, and Andy Douglas.

The Court has now completed its *in camera* review of all of the documents in question.  It has done so for the exclusive purpose of determining which documents might be construed as supporting Venezuela's theory of crime or fraud, and with certain legal standards (explained below) in mind.  The Court emphasizes that it makes no determination that any crime or fraud actually occurred, and no determination that any of the documents which it will order to be produced will be admissible as evidence either in support of a motion or at trial.  Those decisions await another day.

I.

The Court's prior Opinion and Order deals with whether a sufficient showing of the commission of a crime or fraud had been made out to justify *in camera* review of certain documents.  A positive answer to that question does not resolve the issue of whether any of the communications at issue were actually

intended, at least by one of the parties (and not necessarily by the attorney) to further a crime or fraud.  As this Court has explained,

> in order to establish the applicability of the crime-fraud exception, Plaintiff must establish a prima facie showing that a sufficiently serious crime or fraud occurred and that there is some relationship between the communication at issue and the prima facie violation. In re Antitrust Grand Jury, 805 F.2d at 164. With respect to intent, the relevant inquiry is whether the party sought legal advice in furtherance of the crime or fraud. Id. at 168.  See also In re BankAmerica Corp. Securities Litigation, 270 F.3d 639, 642 (8th Cir. 2001).

United States Securities and Exchange Comm'n v. Sierra Brokerage Services, Inc., 2005 WL 6569571, *7 (S.D. Ohio Oct. 18, 2005). In a similar vein, Martensen v. Koch, 201 F.R.D. 562, 574 (D. Colo. 2014) held that "the evidence must demonstrate that the client was engaged in or was planning the criminal conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it."  And, as the court in United States v. Sabbeth, 34 F.Supp.2d 144, 151 (E.D.N.Y. 1999) observed, "even for ongoing schemes, only communications geared to further criminal conduct implicate the exception."  Thus, what this Court had to determine in reviewing the various documents was whether any of them contained a communication which was either obtained in order to further some alleged scheme of criminal or fraudulent conduct, or was closely related to that goal.  Such communications are not deserving of protection, but other communications - even if made between perpetrators of a fraud and their attorneys - which do not meet this criterion are still privileged.  In other words, the crime-fraud exception is not a bludgeon which can be used to obtain, in wholesale fashion, every communication between an attorney and a client who may have committed some crime or fraud,

but only those communications which might have been solicited by the client in order to further his or her illegal or fraudulent activities.  All other attorney-client communications unrelated to that purpose or scheme remain privileged.

II.

Venezuela obviously believes that any fraudulent scheme concocted by Gruppo Triad or Mr. Pavanelli included the effort to obtain, through litigation conducted in a public forum such as this Court, a favorable judgment enforcing the terms of the allegedly fraudulent notes.  This Court has taken a different view.  In its Opinion and Order of August 20, 2015, it concluded that communications between a holder of a different series of Bandagro notes (which Venezuela has painted with the same brush as the ones involved in this case, and which also were acquired from Gruppo Triad) and that holder's counsel which related solely to an effort to litigate the validity of the notes, and to collect on them if they were valid, were not subject to the crime-fraud exception.  Because Venezuela had presented no evidence or persuasive argument that those communications "played any part in the creation, execution, or unsuccessful completion of the alleged scheme," the Court declined to order even an *in camera* review of the documents. See Doc. 593, at 7. That reasoning applies to the vast majority of the documents submitted by CBJ.

Almost every one of those documents is what the Court would characterize as a "garden-variety" communication between attorneys and a client about the possibility of filing suit, the logistics of doing so, and the likelihood of success.  In these communications, Gruppo Triad was soliciting advice about how (lawfully) to proceed in court, and not about how to fabricate notes, obtain false or perjured testimony to support a claim, or bribe officials to recognize the notes' validity.  Simply put,

-4-

Gruppo Triad did not ask CBJ for legal advice which could have been used in any way to further its allegedly fraudulent scheme (apart from advice about how to litigate, which the Court finds not to be part of any criminal or fraudulent course of conduct), nor did CBJ provide any advice which could have been or was actually used for that purpose. The element of "furthering the fraud" referred to in the case law cited above is absent from these communications.

    The two possible exceptions to this description of the documents both relate to a meeting which took place in Italy in 2004. These appear on the CBJ privilege log as Document 31, an email from Mr. Pavanelli to "jairorevilla@hotmail.com" with copies to Mr. Alcalde, Mr. Usuelli, and David Richards (Skye's principal), and Document 39, a memorandum written by Mr. Alcalde to Jeffrey Brown and David Richards about that meeting. The Court cannot tell exactly why the first of these is subject to a claim of privilege, because it is unable to identify all of the recipients or to determine if they are attorneys. Mr. Richards, of course, was not functioning as Gruppo Triad's or Mr. Pavanelli's attorney, but there might be some claim of common interest which would cover Mr. Pavanelli's communications to him (but perhaps not - the Court again has insufficient information to make that ruling). In any event, there is an argument to be made that portions of this meeting related not to the litigation effort but to other parts of Mr. Pavanelli's alleged fraudulent scheme.

    The same subject appears in the latter document describing the meeting, although it is not a communication to or from Gruppo Triad or Mr. Pavanelli - it is a communication between CBJ and Skye. Because that document does not provide any advice to Gruppo Triad or Mr. Pavanelli which might have been used to further a fraud (although it might describe some purportedly

-5-

fraudulent conduct or efforts), it is not subject to the crime-fraud exception.  However, the contents of the memo - that is, the factual description of what occurred at the meeting - would not appear to be privileged, and Venezuela may (if it has not done so already) be entitled to explore that topic with any of the attendees, including Mr. Alcalde.  It just may not ask about what he told other lawyers in his firm, or told his client Skye, about the substance of the meeting.  Consequently, the only document the Court will order produced from the CBJ submission is Document 31.

The documents submitted by Lara Pavanelli are different. Not many of them relate to this or other litigation efforts (although some do); most relate to a change in management of Gruppo Triad after Mr. Pavanelli's death, and communications between Ms. Pavanelli and others and Gruppo's Swiss attorney, Siro Schianchi, concerning how to proceed with Gruppo Triad's business, including realizing on notes which are not the subject of this litigation.

Documents created after Mr. Pavanelli's death, and relating to notes other than the ones involved in this case, may be of only marginal relevance here, but to the extent that they relate to what Venezuela conceives to be a global scheme of fraudulent conduct which encompasses both the notes in suit and others, relevance is not really the deciding factor in the Court's review.  Rather, the key question is, again, whether an argument can be made that the documents relate to some ongoing fraudulent scheme.  Because some of these documents either describe events which occurred earlier in time and which might have been part of the fraud Venezuela alleges, or relate to ongoing efforts to have the notes recognized and paid for by Venezuela (but not necessarily through litigation), there is a sufficient basis upon which to order their production.  The documents which fall into

this category are Group 3, Docs. 1, 2, 4, 6, 11, 16, 17, 19-22, and 24-27, and the June 9, 2011 letter.  The remaining documents do not appear to have any sufficient connection with the scheme detailed by Venezuela to be discoverable.

### III.

For the reasons set forth above, the documents which the Court has concluded are not protected by the attorney-client privilege due to application of the crime-fraud exception shall be produced to Venezuela within fourteen days.

### IV.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge
