```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


DRFP, LLC,                          :

     Plaintiff,                     :

  v.                                :    Case No. 2:04-cv-793

The Republica Bolivariana de
Venezuela, et al.,                  :    JUDGE EDMUND A. SARGUS, JR.
                                         Magistrate Judge Kemp
     Defendants.                    :
```

OPINION AND ORDER

This case is before the Court not on an issue relating to the merits, but to determine, in the language of Fed.R.Civ.P. 45(d)(1) and (2), what must be done "to avoid imposing undue burden or expense on a person subject to [a] subpoena" and to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." The person (actually, persons) in question here are Pierce Cunningham, an Ohio attorney, and one of his clients, Venospa, LLC, an Ohio limited liability company. They have moved for an award of fees and expenses, totaling $60,359.06, incurred in responding to subpoenas served upon them by Defendant The Republica Bolivariana de Venezuela. For the following reasons, the Court will direct Venezuela to pay Mr. Cunningham the amount of $46,059.06.

I.  Background

Venezuela, through trial counsel, executed and served subpoenas on Mr. Cunningham and Venospa on or about March 3, 2015. Each subpoena called for the production of 19 separate categories of documents, excluding subparts (and there are many subparts). The general subject of each document request was the subject matter of this case, which, as numerous prior orders

reveal, involves an effort to collect on certain promissory notes allegedly guaranteed by the government of Venezuela (the notes at issue in this case, notes designated as the "Caroni Notes") and any notes purportedly issued by the financial institution in question (Bandagro) other than those two categories of notes. Venezuela asked for any and all documents relating to those matters and for any communications with a host of people or business entities, at least 63 of which are referred to in the subpoenas. See Doc. 496, Exhibit A.

There has been prior motions practice about these subpoenas. In an Opinion and Order filed on August 20, 2015 (Doc. 593), the Court directed Mr. Cunningham and Venospa to supplement their privilege logs, which had been provided in response to the subpoenas, and denied Venezuela's request to apply the crime-fraud exception to the attorney-client privilege to the documents in question. The Court also reserved the right to shift the cost of complying with the subpoenas from the recipients to Venezuela if the facts warranted that action. Subsequently, the Court ordered a portion of the documents for which Mr. Cunningham and Venospa claimed privilege to be submitted for an *in camera* review. That order also directed Mr. Cunningham and Venospa to keep track of their expenses in attempting to comply with the subpoenas. (Doc. 609). After the Court conducted its *in camera* review, it concluded that none of the documents in question were discoverable. Noting that the subpoena was broad, the documents all dated from 2009 or later, and they were all likely subject to a claim of privilege from the outset, the Court directed the parties to attempt to resolve the issue of how much compensation should be paid to Mr. Cunningham and Venospa as a result of the work they did in responding to the subpoena. See Doc. 614. That produced no results, and the issue of such compensation is now before the Court by way of a motion for attorneys' fees (Doc.

637).  That motion has been fully briefed and is now ready to decide.

## II.  Entitlement to Fees and Expenses

The most recent court order on this subject, Doc. 609, addressed to some extent the issue of entitlement.  There, the Court said that the facts recited in that order "justify compensating Mr. Cunningham to some extent for the effort he made to retrieve the documents at issue."  Id. at 2.  That compensation would be designed not so much to sanction Venezuela as it was to acknowledge that, as a non-party with no stake in this case, and as someone who was burdened by the subpoena, Mr. Cunningham (and his client) were entitled to have some of that burden offset by a party who had a financial interest in the issuance of, and compliance with, the subpoena.

In its 33-page responsive memorandum, Venezuela asks the Court either to deny the motion for fees and expenses or reduce the requested amount very substantially.  It offers eleven separate reasons why the Court should accept its position.  See Doc. 640, at 1-2.  None of them constitutes grounds for declining to make an award of expenses, and the Court reaffirms its conclusion that compensation in some amount is needed in order to reduce the financial burden on Mr. Cunningham and Venospa to a tolerable level.  See Fed.R.Civ.P. 45(d)(2)(b)(ii); see also In re Subpoena of American Nurses Ass'n, 290 F.R.D. 60 (D. Md. 2013), adopted and affirmed 2013 WL 5741242 (D. Md. Aug. 8, 2013).  The more substantive question raised by Venezuela's filing is how much the award should be.

## III.  Amount of Fees and Expenses

### A.  The Initial Response

As to this question, Venezuela begins its argument by asserting that Mr. Cunningham and Venospa unnecessarily incurred expenses by failing to object, by letter, to the subpoenas, thus

-3-

bypassing the opportunity for the parties to engage in a good faith discussion about compliance before motions practice began. This "preemptive motions practice," as Venezuela characterizes it, should not be rewarded with a fee award. The Court gives little credence to this argument because Venezuela made no similar cooperative effort to obtain these documents without a subpoena, choosing not to initiate any contact with either recipient before serving subpoenas for a host of six-year-old documents - most of which were likely to be privileged - and allowing only thirteen days for compliance. Those are not the actions of a party wishing to avoid cost and expense, and the targets of the subpoenas, when presented with such a situation, can hardly be faulted for asserting their objections in a more formal way prior to date on which they were commanded to comply.

### B. The Privilege Logs

Next, Venezuela argues that the costs of compliance were multiplied by the recipients' production of two sets of privilege logs, neither of which complied with the Federal Rules. The first set listed documents only by category, while the second, prepared at the request of the Court, did not really cure the earlier defects. Venezuela also contends that some of the assertions of privilege, such as the attempt to extend the common interest privilege to Oscar Guzman Coza, the former Venezuelan Finance Minister, were frivolous (although no such documents were logged as privileged, and the Court does not recall seeing any such documents during its *in camera* review). There is some merit in the argument that Mr. Cunningham and Venospa did not prepare particularly enlightening or detailed logs; on the other hand, had they done so, the cost of logging the documents may well have been higher. Nevertheless, the Court will factor this argument into its ultimate award.

C.  The Time Spent Reviewing Documents

As its third argument, Venezuela asserts that Mr. Cunningham did not have to review every document that was potentially responsive to the subpoena because he ultimately claimed that all of his communications were privileged, and he could have made that claim simply on the basis of the identity of the sender and recipient of the documents as opposed to reading each and every one.  Consequently, Venezuela claims that his review costs should have been limited to "a few thousand dollars or less...."  Doc. 640, at 11.

This argument, too, carries little weight.  It would surprise the Court if Venezuela's counsel, when responding to a document request, would simply sort potentially responsive documents by categories and make wholesale claims of privilege without regard to the actual content of the documents themselves.  Although Mr. Cunningham and Venospa did claim to have had a common interest with many of the 63 persons or entities listed in the subpoenas, that does not mean that every communication with each of them necessarily was made in furtherance of that interest.  Had it come to light during the course of discussions about the subpoena that no one had actually read the majority of the emails, the Court is confident that Venezuela would have objected to that method of proceeding.  It asked for what was potentially a large number of documents; it now complains that the parties from whom it requested those documents took the request seriously enough to read them.  Enough said.

D.  "Tangential" Tasks

Fourth, Venezuela argues that Mr. Cunningham and Venospa spent time on tasks only tangentially related to the subpoenas.  Those tasks include time spent conferring with counsel for some of the persons or entities named in the subpoenas and for reading unrelated court orders.  In a footnote, Venezuela also objects to

being charged for many of the hours spent by another entity named DBL law, asserting that only the time spent by that firm reviewing documents (3.5 hours) is reimbursable.  The Court will consider these factors when making its award.

### E. The Significance of Two Subpoenas

Venezuela's fifth argument is that the time spent by Mr. Cunningham necessarily included his review of both his own records and those of Venospa, and that the two of them are situated differently.  Venospa does, according to Venezuela, actually have a financial interest in the outcome of this case because it has been attempting to get Gruppo Triad paid on its Bandagro notes since 2001 and because it also holds some Bandagro notes.  The equities do not, says Venezuela, support cost-shifting in favor of Venospa.  This argument may merit a closer look at the fee issue, and will be accounted for below.

### F. Attorneys' Fees

Venezuela next makes a distinction between the cost of responding to the subpoenas and attorneys' fees.  It contends that attorneys' fees are a form of sanctions rather than reimbursement and can be awarded only where there has been an abuse of the subpoena process.  The case law supports this argument to some extent. See North American Rescue Products, Inc. v. Bound Tree Medical, LLC, 2009 WL 4110889 (S.D. Ohio Nov. 19, 2009).  Venezuela then engages in a lengthy explanation of why its subpoenas, though broad, were justified in light of the past conduct of Venospa's principal, Carlos Delgado, and why they are supported by this Court's approval of a Letter of Request which allowed Venezuela to take Mr. Delgado's deposition on similar subjects (although, as of the time that Venezuela filed its brief, that deposition had not taken place).  This argument is primarily directed to the subpoena served on Venospa, although Venezuela also asserts that the one it served on Mr. Cunningham

was equally reasonable because of the ease with which he could purportedly have determined that he had no responsive non-privileged documents. It also contends that it had a good faith belief that the crime-fraud doctrine might be a way for it to pry loose some otherwise privileged documents, although the Court rejected that argument as having no basis in the case law. Again, to the extent that any of these arguments have merit, the Court will consider them when making its award.

### G. Conditions on an Award

In the penultimate section of its memorandum, Venezuela, calling on the Court to exercise its discretion and to apply principles of equity, argues that the Court should not make any award of fees and expenses unless and until Mr. Cunningham produces the non-privileged documents he possesses and which the Court has ordered him to produce; until he or Venospa produce any communications they had with Oscar Guzman; and until Mr. Delgado agrees to appear for his deposition. These are all separate issues from the question of fees and expenses, however, especially the issue of whether Mr. Delgado, who lives in Venezuela and for whom Venezuela already procured a Letter of Request for his deposition, can, in the context of litigation about an award of expenses on subpoenas not directed to Mr. Delgado, be ordered by this Court to appear for a deposition. Neither subpoena asked for that relief, nor could it have. The Court does not believe these issues impact the award to be made.

### H. Good Faith Negotiations

Lastly, Venezuela spends several pages disputing Mr. Cunningham's claim that it did not engage in a good faith effort to resolve this matter. It faults Mr. Cunningham for revealing part of an email which was a settlement proposal and, according to Venezuela, privileged under Fed.R.Evid. 408, but at the same time it has attached the entirety of the email exchange to show

-7-

that it tried in good faith to reach an agreement. It also disavows ever having accused Mr. Cunningham of engaging in fraud or criminal activity, asserting that it took pains to distinguish his activities from those of his client.

This latter assertion is not completely borne out by the record. See, e.g., Doc. 520, at 5, where Venezuela claimed that

> *Cunningham* and Venospa are not interested in complying with the Subpoenas or minimizing their alleged burdens in doing so; *they* are interested instead in stymying Venezuela's discovery efforts and preventing the Court and Venezuela from discovering the full history of the duplicitous Delgado and his involvement with Gruppo Triad's efforts to dupe the Ministry of Finance into finding in favor of Gruppo Triad's claim for payment on bogus Bandagro notes.

(Emphasis supplied). Be that as it may, neither of these factors deserve any significant weight in terms of what represents a fair award of expenses and attorneys' fees (if any of the latter are appropriate). With all of these factors in mind, the Court now turns its attention to Mr. Cunningham's application for reimbursement.

H. The Award

The amount of compensation requested by Mr. Cunningham and Venospa is set forth in Doc. 638. He asks for $52,600.00 for his own time, and for $7,759.06 in expenses. All of the time spent by Mr. Cunningham has been billed at $400.00 per hour. Venezuela does not suggest that the hourly rate is unreasonable. The Court will therefore use that rate in its calculation.

The time entries can be roughly divided into two categories. One category is legal work devoted to matters apart from document review, such as preparing motions, participating in conferences with counsel or the Court, or doing research. The other category is the time spent in the document review itself. This latter category is, in the Court's mind, more in the nature of an

expense incurred than a legal fee, especially as it relates to the documents subpoenaed from Mr. Cunningham directly. His review of his own documents is neither legal work he performed for Venospa nor work done in self-representation, but is more akin to the administrative time spent by the recipient of a subpoena in locating and reviewing documents to see if they are responsive to a subpoena. Mr. Cunningham billed for this time at the same rate he billed for his legal services, but, again, Venezuela has not argued that this approach is wrong, and it certainly should have anticipated that by subpoenaing a lawyer's own documents, that lawyer would spend time in responding which, were it spent on legal work instead, would have a value equal to the attorney's normal billing rate.

  Recognizing that the dissection of any attorney's billing statement - especially one which does not contain an extensive amount of granular detail, as is true for Mr. Cunningham's statement - is akin to operating with a butcher knife rather than a scalpel, the Court comes to this conclusion. There is no basis for discounting any of the out-of-pocket expenses which were paid to consultants. Those total $7,759.06. As to Mr. Cunningham's time, roughly $32,000.00 of the $52,600.00 which he billed represents time spent in locating and reviewing documents or privilege logs. The balance ($20,600.00) seems to fall into the category of legal fees expended in conferences with the Court, motions practice, or research into legal issues. Some time falling into this latter category seems clearly non-compensable; to award the full amount requested for that work would be, as Venezuela has suggested, to compensate Venospa for work done on its behalf in responding to a subpoena issued in a case in which Venospa had some interest, or to compensate both subpoena recipients for routine expenses involved in reviewing the subpoenas, researching the legal obligation to respond, and

making an initial response.  Such ordinary and usual expenses were not occasioned (or at least not in whole) by bad faith on Venezuela's part and would have been necessary to respond to any type of subpoena, even one which was not so broad or so clearly directed to a multitude of privileged communications.  Taking these factors into account, the Court has decided to cut these charges in half, based on its conclusion that the nature of the subpoenas was overly burdensome at the outset, and that burdensome nature, coupled with Venezuela's lack of effort to reduce the burden on the recipients, unnecessarily multiplied these otherwise typical expenses by a factor of two.  Following this logic, the amount of time spent by Mr. Cunningham which is compensable here is $32,000.00 plus one half of the additional fees, or $10,300.00, for a total of $42,300.00

The Court also takes into account Venezuela's contention that two iterations of the privilege log were probably not warranted - the log should have been prepared properly at the outset - and that the time spent compiling the first one should not be compensable.  It is hard to determine exactly how much time was spent on that activity, but the Court's best estimate, looking at the entries between April 14, 2015 and April 16, 2015 is $4,000.00.  That additional reduction will be made as well, making the final calculation as follows:

| | |
|---|---:|
| Time spent by Mr. Cunningham - | $38,300.00 |
| Expenses    - | 7,759.06 |
| Total   - | $46,059.06 |

### IV.  <u>Order</u>

Based on the foregoing, the motion for an award of expenses (Doc. 637) filed by non-party Pierce Cunningham is granted in part.  Venezuela is directed to reimburse Mr. Cunningham in the amount of $46,059.06, and shall do so within 28 days of this

order.

## V. Motion to Reconsider

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge